IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NO. WR-62,699-02


 



EX PARTE RICHARD TULLOS, Applicant
 





ON APPLICATION FOR HABEAS CORPUS


FROM CAUSE No. CR-22984-AA IN THE 159th DISTRICT COURT


OF ANGELINA COUNTY





 Cochran, J., filed a statement concurring in the denial of relief.


CONCURRING STATEMENT 



 I concur in the Court's denial of relief on this post-conviction writ of habeas corpus. 
 Applicant was convicted, in a two-count indictment, of both manufacture of
methamphetamine in an amount of one gram or more but less than four grams and possession
of methamphetamine in an amount of one gram or more but less than four grams. The jury
sentenced him to 15 years' imprisonment on the first count and ten years' imprisonment on
the second count. His convictions and sentences were affirmed on appeal. (1)

 Applicant now claims that his convictions for both manufacture and possession of the
same cache of methamphetamine violate the double jeopardy clause. I agree that the Court
properly denies relief because applicant has failed to prove, by a preponderance of the
evidence, (2)
 that the jury convicted him of both offenses based upon double-counting the same
cache of methamphetamine. Here, five caches containing methamphetamine were found, and
the total weight of methamphetamine, including adulterants and dilutants, was 2.52 grams. 
A rational jury could well have concluded that applicant possessed more than one gram of
methamphetamine that was seized during the manufacturing process and more than one gram
of methamphetamine that was ready for consumption. Because the jury could have based its
two verdicts on two separate groupings of methamphetamine, applicant has not shown, by
a preponderance of the evidence, that his double jeopardy rights were violated.

I.


 The trial record shows that neither applicant nor the State assigned any particular
significance to the different caches or to the distinct manufacture and possession charges. 
Both parties treated the two separate counts as if they were a single offense: "manufacture
and/or possession" of methamphetamine. During opening arguments, for example, neither
party referred to the different quantities of drugs found in the various locations.

 At trial, Officer Graham testified that he received information from applicant's former
girlfriend that applicant was manufacturing "meth" in her trailer. As she was on her way to
a battered women's shelter, she told Officer Graham that he could enter and search her
trailer. When Officer Graham and other police officers entered the trailer, they opened an
interior door and found applicant, the sole occupant of the trailer, standing on the other side. 
They immediately arrested him and then began their search. Officer Graham testified:

 We found clandestine laboratory methamphetamine equipment as well as
methamphetamine. . . . [T]here was plastic tubing; numerous chemicals; Pyrex
drying or baking dishes, which are commonly used as baking dishes, they are
also used for drying the substance; found an accumulator which is used in the
production method; and numerous chemicals in the residence. 


When questioned about "finished product," Officer Graham stated, "[W]e had some liquid
substance which tested positive for methamphetamine, as well as some crystallized
methamphetamine." 

 In all, the officers found five caches of controlled substance material:

 * Exhibit 1 was a glass jar found in the freezer that contained a brownish liquid. 
That substance, which contained methamphetamine, weighed .33 grams.


 * Exhibit 2 was a glass jar found on the kitchen counter which contained
methamphetamine. The contents of that jar weighed .96 grams.


 * Exhibit 3 was a vial containing the contents of a loaded syringe that had been
found in a small box under the recliner in the living room. (3) The liquid
contained methamphetamine and weighed .22 grams.


 * Exhibit 4 was a Pyrex plate found in the kitchen which had a brown substance
on it "that looked like it had kind of been burned, it might have been tried
to-someone tried to dry it too fast, maybe." That brown substance contained
methamphetamine and it weighed 1.01 grams.


 * Exhibit 5 was a spoon found underneath the recliner in the living room in the
same small box that had contained the syringe. It contained a trace amount of
crystallized methamphetamine, weighing less than .01 grams.


 The total weight of the substances found to contain methamphetamine was 2.52
grams. Applicant did not ask the State to elect either the manufacturing or possession counts,
and he did not request the State to specify which exhibits were offered to prove which
charge. 

 During closing arguments, the prosecutor stated, "Richard Tullos manufactures
methamphetamine. And if you manufacture, you're definitely going to possess it. And he
did that here in Angelina County, Texas." Applicant did not object to this argument. 
Defense counsel argued to the jury, "Your job is still to decide whether on August 31st, 2001,
Richard Tullos is guilty of manufacturing meth and/or possessing methamphetamine. . . . The
State did not prove beyond a reasonable doubt that on August 31st of '01 that Richard Tullos
manufactured meth or possessed it in that trailer." The jury found applicant guilty of both
offenses.


II.


 The Double Jeopardy Clause of the Federal Constitution protects against multiple
punishments for the same offense. (4) Under the Blockburger test, (5) the offense of manufacture
of a controlled substance is not the "same offense" as possession of a controlled substance
because each requires an element that the other does not. (6) "The assumption underlying the
Blockburger rule is that Congress ordinarily does not intend to punish the same offense under
two different statutes." (7) However, this Court has noted that the Blockburger test does not
necessarily end the double-jeopardy inquiry:

 The inquiry is whether the Legislature intended to permit multiple
punishments. The Blockburger test is a useful tool for ascertaining legislative
intent, but it is not the only tool. Other (nonexclusive) considerations relevant
to determining whether the Legislature intended multiple punishments are:
whether the offenses provisions are contained within the same statutory
section, whether the offenses are phrased in the alternative, whether the
offenses are named similarly, whether the offenses have common punishment
ranges, whether the offenses have a common focus (i.e., whether the
"gravamen" of the offense is the same) and whether that common focus tends
to indicate a single instance of conduct, whether the elements that differ
between the offenses can be considered the "same" under an imputed theory
of liability which would result in the offenses being considered the same under
Blockburger (i.e. a liberalized Blockburger standard utilizing imputed elements),
and whether there is legislative history containing an articulation of an intent
to treat the offenses as the same or different for double jeopardy purposes. (8)


 We have previously held that "when delivery of a controlled substance completes an
offer to sell that same substance there is but one offense, for which only one punishment may
be imposed." (9) Similarly, at least one Texas court has concluded that a person cannot be
convicted of separate offenses for possession and possession with intent to deliver when only
one discrete cache of controlled substance was found on his person. (10) The rationale for
permitting only one conviction and punishment for manufacturing, possessing, or delivering
(or attempting any of those offenses) a single cache of a specific controlled substance is that
all of these criminal acts "are points along a continuum in the line of drug distribution, from
its original manufacture until its physical delivery to the ultimate consumer." (11) Thus,
regardless of where the defendant, along with his individual cache of drugs, "is apprehended
along that continuum, he may be prosecuted under 
Texas law." (12) But he cannot be serially
prosecuted or punished for manufacturing, possessing and delivering that same cache. He
may, of course, be charged with all three acts-manufacture, possession, or delivery of the
same single baggie or cache-but he may be punished for only one. (13)

III.


 In the present case, Officer Graham seized five different caches of drugs. Some-the
loaded syringe and the spoon found under the recliner in the living room-obviously
contained fully manufactured methamphetamine. Others-the two glass jars filled with liquid
found in the kitchen-contained partially manufactured methamphetamine. That leaves the
fifth cache-the Pyrex plate found in the kitchen-which appeared to Officer Graham to
contain "burned" methamphetamine- that is, methamphetamine that had been too quickly
"cooked." Much like burnt toast, one might grimace but eat it as is, another might throw it
away, and still another might scrape off the burnt part and retoast it. Ready or not, it is still
toast. Or, as in this case, methamphetamine, regardless of whether it was seized while still
in the manufacturing process or it was ready for use.

 Thus, it is entirely possible that the jury concluded that the liquid in the two glass jars,
which weighed a total of 1.29 grams, was still within the manufacturing stage and therefore
was legally sufficient to support applicant's conviction for manufacturing more than one but
less than four grams of methamphetamine. Similarly, it could have concluded that the brown
substance on the Pyrex plate, the liquid in the syringe, and the crystallized methamphetamine
on the spoon, which together weighed slightly more than 1.23 grams, was usable
methamphetamine and so was legally sufficient to support applicant's conviction for
possession of more than one but less than four grams of methamphetamine.

 The trial court, in its findings of fact and conclusions of law determined that the
distinct caches of methamphetamine would support distinct manufacturing and possession
convictions. Generally this Court will defer to the findings of the trial court if they are
supported by the record, as they are here. (14) At any rate, applicant has failed to prove, by a
preponderance of the evidence, either 1) that the jury could not have reached the conclusion
that the distinct caches of methamphetamine would support distinct manufacturing and
possession convictions, or 2) that the undisputed facts demonstrate that a double jeopardy
violation is clearly apparent on the face of the record. (15) 

 For these reasons, I join in denying applicant relief on his habeas corpus application.

Filed: December 6, 2006

Do Not Publish 
1. Tullos v. State, No. 09-03-106-CR, 2004 Tex. App. LEXIS 5186 (Tex. App.-Beaumont,
June 9, 2004, pet. ref'd) (not designated for publication). 
2. Applicant bears the burden of proving, by a preponderance of evidence, that he is
entitled to habeas corpus relief. Ex parte Peterson, 117 S.W.3d 804, 818 (Tex. Crim. App. 2003)
(habeas corpus applicant must "prove his double jeopardy claim by a preponderance of the
evidence"); see also Ex parte Thomas, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995) ("The burden
of proof in a writ of habeas corpus is on the applicant to prove by a preponderance of the
evidence his factual allegations."); Ex parte Adams, 768 S.W.2d 281, 287-88 (Tex. Crim. App.
1989).


3. Officer Graham testified that he brought and used the glass vial to hold the liquid
contents that he transferred from the syringe because the laboratory will not take a syringe.
4. See Brown v. Ohio, 432 U.S. 161, 168-69 (1977); Langs v. State, 183 S.W.3d 680, 685
(Tex. Crim. App. 2006); Ex parte Peterson, 738 S.W.2d 688, 689 (Tex. Crim. App. 1987).
5. Blockburger v. United States, 284 U.S. 299, 304 (1932) (stating that, in determining
whether Congress intended the same conduct to be punishable under two criminal provisions,
courts ask "whether each provision requires proof of a fact which the other does not").
6. To support a conviction for possession of methamphetamine, the State would be
required to show that (1) applicant exercised actual care, control, or custody of the substance, (2)
he was conscious of his connection with it, and (3) he possessed the substance knowingly or
intentionally. Tex. Health & Safety Code § 481.115. To support a conviction of
manufacturing methamphetamine, the State must show that applicant had been manufacturing
methamphetamine at the time of his arrest. Tex. Health & Safety Code § 481.112. The
statutory definition of the term "manufacture" is found in § 481.002(25).
7. Ball v. United States, 470 U.S. 856, 861 (1985).
8. Ervin v. State, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).
9. Lopez v. State, 108 S.W.3d 293, 299 (Tex. Crim. App. 2003) (concluding that the
legislature intended that one sale of a discrete amount of controlled substance was punishable as
a single offense, not to be broken down into separate offenses for each step of the sale).
10. Berger v. State, 104 S.W.3d 199, 205-06 (Tex. App.-Austin 2003, no pet.)
11. Lopez, 108 S.W.3d at 297.
12. Id.
13. See id. at 297-301.
14. Ex parte Thompson, 153 S.W.3d 416, 418 (Tex. Crim. App. 2005).
15. See Langs v. State, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006) (stating that because
of the "'fundamental nature of the double jeopardy protections, a double jeopardy claim may be
raised for the first time on appeal or even for the first time on collateral attack' if two conditions
are met: (1) 'the undisputed facts show the double jeopardy violation is clearly apparent on the
face of the record'; and (2) 'when enforcement of the usual rules of procedural default serves no
legitimate state interest.'") (quoting Gonzalez v. State, 973 S.W.2d 427, 431 (Tex. App.-Austin
1998), aff'd, 8 S.W.3d 640 (Tex. Crim. App. 2000)).