

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-398-CR

CHRISTOPHER GARFIAS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 213TH  DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Christopher Garfias appeals from his convictions for aggravated robbery with a deadly weapon and aggravated assault with a deadly weapon. We affirm.

Just after midnight on March 1, 2006, appellant and Robbie Fernandez entered a 24-hour Conoco gas station store in Hurst.  The couple planned to

---

[1] *See* TEX. R. APP. P. 47.4.

burglarize the store, and although they did not ultimately take anything from the store, appellant shot the clerk four times, critically injuring him.

Following a two-day trial, the jury convicted appellant of aggravated robbery with a deadly weapon and aggravated assault with a deadly weapon. After hearing additional evidence and argument, the jury assessed punishment at sixty years' confinement for the aggravated robbery, and life and a ten thousand dollar fine for the aggravated assault.[2] The trial court sentenced appellant in accordance with the jury's verdict and ordered the sentences to run concurrently.

In his first and second points, appellant contends that his convictions for both aggravated robbery and aggravated assault based on the same criminal transaction violate the Fifth Amendment's prohibition against double jeopardy. Appellant did not raise a double jeopardy objection in the trial court.

Appellant has the burden to "preserve, in some fashion," a double jeopardy objection at or before the time the charge is submitted to the jury.[3] Because of the fundamental nature of double jeopardy, however, a double jeopardy claim may be raised for the first time on appeal when "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the

---

[2] A prior felony conviction enhanced both of these sentences.

[3] *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).

record and when enforcement of usual rules of procedural default serves no legitimate state interests."[4]

Appellant's double jeopardy complaint alleges multiple punishments for the same offense.[5] A multiple punishment double jeopardy violation is clearly apparent on the face of the record when the record affirmatively shows multiple punishments resulting from the commission of a single act that violated two separate penal statutes, one of which is, on its face, subsumed in the other.[6] While double jeopardy precludes a defendant from being punished twice for the same offense, it does not prevent a second punishment for the same conduct.[7]

To determine whether two convictions impose multiple punishments under the Double Jeopardy Clause, we apply the "same elements" test

---

[4] *Id.* at 643.

[5] *See Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).

[6] *See Stephenson v. State*, Nos. 02-07-00034-CR, 02-07-00035-CR, 02-07-00036-CR, 2008 WL 755575, at *2 (Tex. App.—Fort Worth Mar. 20, 2008, no pet. h.) (mem. op.); *Perez v. State*, No. 02-06-00225-CR, 2007 WL 2744914, at *6 (Tex. App.—Fort Worth Sept. 20, 2007, pet. ref'd) (mem. op., not designated for publication).

[7] *E.g.*, *Blockburger v. United States*, 284 U.S. 299, 303–04, 52 S. Ct. 180, 182 (1932) (holding that two convictions for one sale of narcotics that violated two statutory provisions did not violate double jeopardy); *Ex parte Smith*, 884 S.W.2d 551, 554 (Tex. App.—Austin 1994, no pet.); *King v. State*, No. 02-06-00055-CR, 2007 WL 1575068, at *3–4 (Tex. App.—Fort Worth May 31, 2007, no pet.) (mem. op., not designated for publication).

articulated in *Blockburger v. United States*.[8] This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offen[s]e' and double jeopardy bars additional punishment and successive prosecution."[9] Greater and lesser included offenses are the same offense for double jeopardy purposes.[10]

Under *Blockburger*, we are to consider both the statutory elements and any additional nonstatutory allegations found in the charging instruments.[11] Thus, we compare the elements of aggravated robbery and aggravated assault as the State alleged those offenses in the indictment.[12]

---

[8] *Langs*, 183 S.W.3d at 685 (citing *Blockburger*, 284 U.S. 299, 52 S. Ct. 180); *see also Garrison v. State*, Nos. 02-04-00450-CR, 02-04-00451-CR, 2005 WL 1594258, at *6 (Tex. App.—Fort Worth July 7, 2005, pet. ref'd) (not designated for publication) (applying *Blockburger* to determine whether error was clearly apparent on the face of the record).

[9] *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993).

[10] *See Ex parte Goodman*, 152 S.W.3d 67, 71 (Tex. Crim. App. 2004), *cert. denied*, 545 U.S. 1128 (2005); *Parrish v. State*, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981) (explaining that, depending upon the facts proven, aggravated assault can be a lesser included offense of aggravated robbery).

[11] *See Parrish*, 869 S.W.2d at 354.

[12] *E.g.*, *Girdy v. State*, 213 S.W.3d 315, 318 n.4 (Tex. Crim. App. 2006) (demonstrating that the State needed to prove the elements of aggravated assault as it alleged that offense in the indictment).

4

Count one of the indictment charged appellant with aggravated robbery with a deadly weapon under Texas Penal Code section 29.03(a)(2).[13] To prove this offense as alleged, the State needed to establish the following:

- Appellant
- On or about March 1, 2006
- In Tarrant County, Texas
- Intentionally or knowingly
- While in the course of committing theft of property[14]
- With intent to obtain or maintain control of said property
- Threatened or placed
- Shahid Shahid
- In fear of imminent bodily injury or death
- Appellant used or exhibited a deadly weapon (a firearm).[15]

The jury charge on aggravated robbery tracked the language of the indictment.

Count two of the indictment charged the offense of aggravated assault with a deadly weapon as defined in penal code section 22.02(a)(2).[16] To prove this offense, the State needed to establish the following:

- Appellant
- On or about March 1, 2006
- In Tarrant County, Texas
- Intentionally or knowingly
- Caused bodily injury

---

[13] TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003).

[14] A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. *See id.* § 31.03(a) (Vernon 2003 & Supp. 2007).

[15] *See id.* §§ 29.03(a)(2), 29.02(a)(2), 31.03(a) (Vernon 2003).

[16] *See id.* § 22.02(a)(2) (Vernon 2003 & Supp. 2007).

5

- To Shahid Shahid
- By shooting him with a firearm
- Appellant used or exhibited a deadly weapon (a firearm).[17]

The jury charge on aggravated assault tracked the language of the indictment.

These two offenses, as alleged in the indictment, each required proof of at least one element that the other did not. Aggravated robbery with a deadly weapon, as alleged, required the State to prove that appellant, while in the course of committing theft of property and with the intent to obtain or maintain control of said property, threatened or placed Shahid in fear of imminent bodily injury or death.[18] Aggravated assault with a deadly weapon, as alleged, required the State to prove that appellant caused bodily injury to Shahid by shooting him with a firearm.[19]

Because each offense required proof of an element the other did not, the record does not affirmatively show that either offense is subsumed within the other. Therefore, a double jeopardy violation does not clearly appear on the face of the record, and we cannot address appellant's complaints further. We overrule appellant's first and second points.

---

[17] *See id.* §§ 22.02(a)(2), 22.01(a)(1) (Vernon 2003 & Supp. 2007).

[18] *See id.* §§ 29.03(a)(2), 29.02(a)(2), 31.03(a).

[19] *See id.* §§ 22.02(a)(2), 22.01(a)(1).

6

In his third, fourth, and fifth points, appellant argues that the evidence is legally and factually insufficient to establish the theft or attempted theft required to support his aggravated robbery conviction. In the alternative, he argues that the evidence at most establishes attempted aggravated robbery, and if so, the trial court instructed the jury on the wrong punishment range.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[20]

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[21] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust.[22] To reverse under the second ground, we

---

[20] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[21] *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

[22] *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[23]

A person commits the offense of aggravated robbery if he commits robbery and uses or exhibits a deadly weapon.[24]  A person commits robbery if in the course of committing theft and with intent to obtain or maintain control of the property he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[25]

Proof of a completed theft, however, is not required to establish the offense of aggravated robbery.[26]  The penal code defines "in the course of committing theft" for purposes of Chapter 29 (the chapter defining robbery and aggravated robbery) as including conduct that occurs in an attempt to commit theft.[27]  To show an attempted theft, the State carried the burden of proving

---

[23] *Watson*, 204 S.W.3d at 417.

[24] TEX. PENAL CODE ANN. § 29.03(a)(2).

[25] *Id.* § 29.02(a)(2).

[26] *See Bustamante v. State*, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003); *Ex parte Hawkins*, 6 S.W.3d 554, 559–60 & n.10 (Tex. Crim. App. 1999); *Maldonado v. State*, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999).

[27] TEX. PENAL CODE ANN. § 29.01(1) (Vernon 2003) ("'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.").

8

beyond a reasonable doubt that appellant had the specific intent to commit theft and that appellant committed an act amounting to more than mere preparation.[28]  The requisite intent may be inferred from circumstantial evidence.[29]

The evidence at trial showed as follows:

Shahid typically locked the gas station at midnight, but he allowed appellant and Fernandez to enter after midnight on March 1, 2006, because he knew Fernandez.  Fernandez and appellant ate food they had brought with them, and Shahid worked in another area of the store.  At some point, Shahid heard a gunshot and breaking glass.  When he went to investigate, he saw appellant and Fernandez outside the store and noticed that appellant had a gun.  The pair reentered the store, and Fernandez, who was crying, tried to hide behind Shahid.  Shahid asked appellant not to shoot, but appellant shot Shahid

---

[28] *See id.* § 15.01(a) (Vernon 2003).

[29] *See Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996); *Babineaux v. State*, Nos. 01-06-00608-CR, 01-06-00609-CR, 2007 WL 1953693, at *6–7 (Tex. App.—Houston [1st Dist.] July 6, 2007, pet. ref'd) (mem. op., not designated for publication).

four times at close range.[30]  Shahid failed to identify appellant in the courtroom,[31] and he did not think anything had been stolen from the store.

A forensic video analyst testified that he had analyzed the gas station's time lapse surveillance video showing the shooting.  The analyst did not observe the shooter steal anything from the store and could not make a positive identification of the gunman.

Officer Jacob Eubanks responded to the scene after the shooting and found Fernandez and Shahid, but not appellant.  Officer Eubanks testified that Fernandez told him her friend had been shot, and that she later gave "conflicting stories."  The officer also stated that Shahid did not complain about being robbed and the register was not open, but appellant had taken Fernandez's Honda CRV SUV from the parking lot.[32]

Officer Lawrence Marx, the crime scene officer, photographed the scene and did not notice money or anything else lying around the store.  He found a fired bullet in the store that appeared to be a smaller caliber than a .45 caliber.

---

[30] As a result of his injuries, Shahid spent almost two months in the hospital, including thirty-five days in a coma.

[31] The record reflects that Shahid pointed to the back of the courtroom when asked to identify the man who shot him.

[32] Fernandez did not report her vehicle stolen, and the indictment alleged that Shahid was the victim of both offenses.

10

Detective Jeffrey Caudle testified that he interviewed Fernandez, and she implicated appellant. He agreed with Officer Eubanks that Fernandez gave conflicting stories, saying at first that she did not know appellant, and later admitting that she knew him, that they had had a relationship, and that she came to the store with him. Detective Caudle created a photo spread with appellant's photo, and Fernandez identified appellant as the man who shot Shahid. Fernandez also identified appellant on a still photo from the surveillance video. Detective Caudle also showed a photo spread to Shahid, and Shahid identified appellant as the man who shot him, although appellant challenged Shahid's identification.[33] Detective Caudle also testified that to his knowledge nothing had been taken from the store.

Detective Chad Woodside testified to physical evidence that was found on or with appellant at the time of his arrest. Specifically, Detective Woodside obtained clothing that, based on the surveillance video, appeared to be the clothing worn by the shooter, a handgun case and magazine, .38 and .45 caliber ammunition (some spent and some unspent), and keys to Fernandez's

---

[33] Concerned that Shahid might not survive his injuries, Detective Caudle showed the photo spread to Shahid while he was in the hospital, had just come out of surgery, and was "still a little groggy" and mumbling. Shahid identified appellant by pointing to his photograph, and he made the same identification three times with a five minute break in between each showing. At one point, Shahid asked the detective, "[I]f I show you who shot me, will you get m[e] some pain medicine."

11

Honda CRV. Detective Woodside also noted some discrepancies in Fernandez's story. Despite Fernandez's and appellant's conflicting stories implicating each other, Detective Woodside pursued appellant because he was clearly the shooter.[34]

Further, appellant gave a videotaped statement confessing to the shooting.[35] In the statement, appellant admitted that he went to the store with Fernandez to "rob" it, although he claimed that the crime was all Fernandez's idea. Appellant also asserted that at one point he wanted to leave the store and not complete the robbery, but Fernandez refused to leave. Appellant's counsel admitted in opening statement that appellant "had a weapon, he used it, and that there were shots fired."

Finally, appellant's mother testified that Fernandez was appellant's girlfriend and had picked appellant up on the night of the offenses. Appellant's defense at trial was, first, that although he fired shots, he did not commit aggravated robbery because he did not take anything from the store. Further, with regard to the aggravated assault charge, appellant argued that Fernandez's

---

[34] Fernandez did not testify.

[35] The jury watched this video and also listened to the tape of the 911 call.

conflicting stories and Shahid's condition during the hospital identification and failure to identify appellant in the courtroom created reasonable doubt.

Appellant's statement, however, established that he and Fernandez went to the store intending to commit a robbery, and appellant's acts of entering the store with a loaded firearm and shooting the clerk four times amounted to more than mere preparation.[36] Thus, the evidence is sufficient to prove an attempted theft, which in turn is sufficient to prove the theft component of aggravated robbery.[37] Applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the jury's verdict. We overrule appellant's third, fourth, and fifth points.

Having overruled all of appellant's points, we affirm the trial court's judgment.

JOHN CAYCE
CHIEF JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

---

[36] *See, e.g.*, *Hart v. State*, 581 S.W.2d 675, 678 (Tex. Crim. App. [Panel Op.] 1979) (holding that "putting [a] weapon to use to inflict injuries clearly goes beyond preparation"); *Henderson v. State*, No. 03-96-00446-CR, 1998 WL 53967, at *7–8 (Tex. App.—Austin Feb. 12, 1998, no pet.) (not designated for publication) (holding that evidence was sufficient to establish attempted aggravated robbery when appellant's statement showed the requisite intent and his actions included bringing a loaded gun).

[37] *See* TEX. PENAL CODE ANN. § 29.01(1).

13

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  June 12, 2008