COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-398-CR

 

 

CHRISTOPHER GARFIAS                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH  DISTRICT COURT
OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Christopher Garfias
appeals from his convictions for aggravated robbery with a deadly weapon and
aggravated assault with a deadly weapon. 
We affirm.








Just after midnight on March
1, 2006, appellant and Robbie Fernandez entered a 24-hour Conoco gas station
store in Hurst.  The couple planned to
burglarize the store, and although they did not ultimately take anything from
the store, appellant shot the clerk four times, critically injuring him. 

Following a two-day trial,
the jury convicted appellant of aggravated robbery with a deadly weapon and
aggravated assault with a deadly weapon. 
After hearing additional evidence and argument, the jury assessed
punishment at sixty years= confinement
for the aggravated robbery, and life and a ten thousand dollar fine for the
aggravated assault.[2]  The trial court sentenced appellant in
accordance with the jury=s verdict
and ordered the sentences to run concurrently.  


In his first and second
points, appellant contends that his convictions for both aggravated robbery and
aggravated assault based on the same criminal transaction violate the Fifth
Amendment=s
prohibition against double jeopardy. 
Appellant did not raise a double jeopardy objection in the trial
court.   








Appellant has the burden to Apreserve, in some fashion,@ a double jeopardy objection at or before the time the charge is
submitted to the jury.[3]  Because of the fundamental nature of double
jeopardy, however, a double jeopardy claim may be raised for the first time on
appeal when Athe
undisputed facts show the double jeopardy violation is clearly apparent on the
face of the record and when enforcement of usual rules of procedural default
serves no legitimate state interests.@[4] 

Appellant=s double jeopardy complaint alleges multiple punishments for the same
offense.[5]  A multiple punishment double jeopardy
violation is clearly apparent on the face of the record when the record
affirmatively shows multiple punishments resulting from the commission of a
single act that violated two separate penal statutes, one of which is, on its
face, subsumed in the other.[6]  While double jeopardy precludes a defendant
from being punished twice for the same offense, it does not prevent a second
punishment for the same conduct.[7]








        To determine whether two convictions impose multiple
punishments under the Double Jeopardy Clause, we apply the Asame elements@ test
articulated in Blockburger v. United States.[8]  This test Ainquires whether each offense contains an element not contained in the
other; if not, they are the >same offen[s]e= and double
jeopardy bars additional punishment and successive prosecution.@[9]  Greater and lesser included
offenses are the same offense for double jeopardy purposes.[10]

Under Blockburger, we
are to consider both the statutory elements and any additional nonstatutory
allegations found in the charging instruments.[11]  Thus, we compare the elements of aggravated
robbery and aggravated assault as the State alleged those offenses in the
indictment.[12]








Count one of the indictment
charged appellant with aggravated robbery with a deadly weapon under Texas
Penal Code section 29.03(a)(2).[13]  To prove this offense as alleged, the State
needed to establish the following:

$      
Appellant

$      
On or about March 1, 2006

$      
In Tarrant County, Texas

$      
Intentionally or knowingly

$      
While in the course of committing theft of
property[14]

$      
With intent to obtain or maintain control of said
property

$      
Threatened or placed

$      
Shahid Shahid

$      
In fear of imminent bodily injury or death

$      
Appellant used or exhibited a deadly weapon (a
firearm).[15]


 

The jury charge on aggravated
robbery tracked the language of the indictment. 
     Count two of the indictment
charged the offense of aggravated assault with a deadly weapon as defined in
penal code section 22.02(a)(2).[16]  To prove this offense, the State needed to
establish the following:

$      
Appellant 

$      
On or about March 1, 2006

$      
In Tarrant County, Texas

$      
Intentionally or knowingly

$      
Caused bodily injury








$      
To Shahid Shahid 

$      
By shooting him with a firearm

$      
Appellant used or exhibited a deadly weapon (a
firearm).[17]  

 

The jury charge on aggravated
assault tracked the language of the indictment. 
      These two offenses, as
alleged in the indictment, each required proof of at least one element that the
other did not.  Aggravated robbery with a
deadly weapon, as alleged, required the State to prove that appellant, while in
the course of committing theft of property and with the intent to obtain or
maintain control of said property, threatened or placed Shahid in fear of
imminent bodily injury or death.[18]  Aggravated assault with a deadly weapon, as
alleged, required the State to prove that appellant caused bodily injury to
Shahid by shooting him with a firearm.[19]  

Because each
offense required proof of an element the other did not,  the record does not affirmatively show that
either offense is subsumed within the other. 
Therefore, a double jeopardy violation does not clearly appear on the
face of the record, and we cannot address appellant=s complaints further.  We
overrule appellant=s first and
second points.








In his
third, fourth, and fifth points, appellant argues that the evidence is legally
and factually insufficient to establish the theft or attempted theft required
to support his aggravated robbery conviction. 
In the alternative, he argues that the evidence at most establishes
attempted aggravated robbery, and if so, the trial court instructed the jury on
the wrong punishment range. 

In reviewing
the legal sufficiency of the evidence to support a conviction, we view all the
evidence in the light most favorable to the prosecution in order to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.[20]









When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.[21]
We then ask whether the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact-finder=s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact-finder=s determination is manifestly unjust.[22]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[23]


A person
commits the offense of aggravated robbery if he commits robbery and uses or
exhibits a deadly weapon.[24]  A person commits robbery if in the course of
committing theft and with intent to obtain or maintain control of the property
he intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.[25]









Proof of a
completed theft, however, is not required to establish the offense of
aggravated robbery.[26]  The penal code defines Ain the course of committing theft@ for purposes of Chapter 29 (the chapter defining robbery and
aggravated robbery) as including conduct that occurs in an attempt to commit
theft.[27]  To show an attempted theft, the State carried
the burden of proving beyond a reasonable doubt that appellant had the specific
intent to commit theft and that appellant committed an act amounting to more
than mere preparation.[28]  The requisite intent may be inferred from
circumstantial evidence.[29]  

The evidence
at trial showed as follows:








Shahid
typically locked the gas station at midnight, but he allowed appellant and
Fernandez to enter after midnight on March 1, 2006, because he knew
Fernandez.  Fernandez and appellant ate
food they had brought with them, and Shahid worked in another area of the
store.  At some point, Shahid heard a
gunshot and breaking glass.  When he went
to investigate, he saw appellant and Fernandez outside the store and noticed
that appellant had a gun.  The pair
reentered the store, and Fernandez, who was crying, tried to hide behind
Shahid.  Shahid asked appellant not to
shoot, but appellant shot Shahid four times at close range.[30]  Shahid failed to identify appellant in the
courtroom,[31]
and he did not think anything had been stolen from the store. 

A forensic
video analyst testified that he had analyzed the gas station=s time lapse surveillance video showing the shooting.  The analyst did not observe the shooter steal
anything from the store and could not make a positive identification of the
gunman. 

Officer
Jacob Eubanks responded to the scene after the shooting and found Fernandez and
Shahid, but not appellant.  Officer
Eubanks testified that Fernandez told him her friend had been shot, and that
she later gave Aconflicting
stories.@  The officer also stated that
Shahid did not complain about being robbed and the register was not open, but
appellant had taken Fernandez=s Honda CRV SUV from the parking lot.[32]


Officer
Lawrence Marx, the crime scene officer, photographed the scene and did not
notice money or anything else lying around the store.  He found a fired bullet in the store that
appeared to be a smaller caliber than a .45 caliber. 

 








Detective
Jeffrey Caudle testified that he interviewed Fernandez, and she implicated
appellant.  He agreed with Officer
Eubanks that Fernandez gave conflicting stories, saying at first that she did
not know appellant, and later admitting that she knew him, that they had had a
relationship, and that she came to the store with him.  Detective Caudle created a photo spread with
appellant=s photo, and
Fernandez identified appellant as the man who shot Shahid.  Fernandez also identified appellant on a
still photo from the surveillance video. 
Detective Caudle also showed a photo spread to Shahid, and Shahid
identified appellant as the man who shot him, although appellant challenged
Shahid=s identification.[33]  Detective Caudle also testified that to his
knowledge nothing had been taken from the store.  








Detective
Chad Woodside testified to physical evidence that was found on or with
appellant at the time of his arrest. 
Specifically, Detective Woodside obtained clothing that, based on the
surveillance video, appeared to be the clothing worn by the shooter, a handgun
case and magazine, .38 and .45 caliber ammunition (some spent and some
unspent), and keys to Fernandez=s Honda CRV.  Detective Woodside
also noted some discrepancies in Fernandez=s story.  Despite Fernandez=s and appellant=s
conflicting stories implicating each other, Detective Woodside pursued
appellant because he was clearly the shooter.[34]


Further,
appellant gave a videotaped statement confessing to the shooting.[35]  In the statement, appellant admitted that he
went to the store with Fernandez to Arob@ it,
although he claimed that the crime was all Fernandez=s idea.  Appellant also asserted
that at one point he wanted to leave the store and not complete the robbery,
but Fernandez refused to leave. 
Appellant=s counsel
admitted in opening statement that appellant Ahad a weapon, he used it, and that there were shots fired.@  








Finally,
appellant=s mother
testified that Fernandez was appellant=s girlfriend and had picked appellant up on the night of the
offenses.  Appellant=s defense at trial was, first, that although he fired shots, he did
not commit aggravated robbery because he did not take anything from the
store.  Further, with regard to the
aggravated assault charge, appellant argued that Fernandez=s conflicting stories and Shahid=s condition during the hospital identification and failure to identify
appellant in the courtroom created reasonable doubt. 

Appellant=s statement, however, established that he and Fernandez went to the
store intending to commit a robbery, and appellant=s acts of entering the store with a loaded firearm and shooting the
clerk four times amounted to more than mere preparation.[36]  Thus, the evidence is sufficient to prove an
attempted theft, which in turn is sufficient to prove the theft component of
aggravated robbery.[37]  Applying the appropriate standards of review,
we hold that the evidence is legally and factually sufficient to support the
jury=s verdict.  We overrule
appellant=s third,
fourth, and fifth points.

Having
overruled all of appellant=s points, we affirm the trial court=s judgment.

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL A:  CAYCE, C.J.; HOLMAN
and WALKER, JJ.

 








DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  June 12, 2008                                 











[1]See Tex. R. App. P. 47.4.





[2]A
prior felony conviction enhanced both of these sentences. 





[3]Gonzalez
v. State, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).  





[4]Id. at
643.





[5]See
Langs v. State, 183 S.W.3d 680, 685 (Tex. Crim. App.
2006).  





[6]See
Stephenson v. State, Nos. 02-07-00034-CR, 02-07-00035-CR, 02-07-00036-CR,
2008 WL 755575, at *2 (Tex. App.CFort Worth Mar. 20, 2008, no
pet. h.) (mem. op.); Perez v. State, No. 02-06-00225-CR, 2007 WL
2744914, at *6 (Tex. App.CFort
Worth Sept. 20, 2007, pet. ref=d) (mem. op., not designated
for publication).





[7]E.g.,
Blockburger v. United States, 284 U.S. 299, 303B04,
52 S. Ct. 180, 182 (1932) (holding that two convictions for one sale of
narcotics that violated two statutory provisions did not violate double
jeopardy); Ex parte Smith, 884 S.W.2d 551, 554 (Tex. App.CAustin
1994, no pet.); King v. State, No. 02‑06‑00055‑CR,
2007 WL 1575068, at *3B4
(Tex. App.CFort
Worth May 31, 2007, no pet.) (mem. op., not designated for publication).





[8]Langs, 183
S.W.3d at 685 (citing Blockburger, 284 U.S. 299, 52 S. Ct. 180); see
also Garrison v. State, Nos. 02-04-00450-CR, 02-04-00451-CR, 2005 WL 1594258,
at *6 (Tex. App.CFort
Worth July 7, 2005, pet. ref=d) (not designated for
publication) (applying Blockburger to determine whether error was
clearly apparent on the face of the record).





[9]United
States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856
(1993).





[10]See
Ex parte Goodman, 152 S.W.3d 67, 71 (Tex. Crim. App. 2004), cert.
denied, 545 U.S. 1128 (2005); Parrish v. State, 869 S.W.2d 352, 354
(Tex. Crim. App. 1994); Royster v. State, 622 S.W.2d 442, 446 (Tex.
Crim. App. 1981) (explaining that, depending upon the facts proven, aggravated
assault can be a lesser included offense of aggravated robbery). 





[11]See
Parrish, 869 S.W.2d at 354.





[12]E.g., Girdy
v. State, 213 S.W.3d 315, 318 n.4 (Tex. Crim. App. 2006) (demonstrating
that the State needed to prove the elements of aggravated assault as it alleged
that offense in the indictment).





[13]Tex. Penal Code Ann. '
29.03(a)(2) (Vernon 2003).





[14]A
person commits theft if he unlawfully appropriates property with intent to
deprive the owner of property.  See
id. '
31.03(a) (Vernon 2003 & Supp. 2007).





[15]See
id. '' 29.03(a)(2),
29.02(a)(2), 31.03(a) (Vernon 2003).





[16]See
id. ' 22.02(a)(2)
(Vernon 2003 & Supp. 2007).





[17]See
id. '' 22.02(a)(2),
22.01(a)(1) (Vernon 2003 & Supp. 2007).





[18]See
id. '' 29.03(a)(2),
29.02(a)(2), 31.03(a).





[19]See
id. '' 22.02(a)(2),
22.01(a)(1). 





[20]Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).





[21]Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).





[22]Watson, 204
S.W.3d at 414B15,
417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).





[23]Watson, 204
S.W.3d at 417.





[24]Tex. Penal Code Ann. '
29.03(a)(2).





[25]Id. '
29.02(a)(2).





[26]See
Bustamante v. State, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003); Ex
parte Hawkins, 6 S.W.3d 554, 559B60 & n.10 (Tex. Crim.
App. 1999); Maldonado v. State, 998 S.W.2d 239, 243 (Tex. Crim. App.
1999).





[27]Tex. Penal Code Ann. '
29.01(1) (Vernon 2003) (A>In
the course of committing theft= means conduct that occurs in
an attempt to commit, during the commission, or in immediate flight after the
attempt or commission of theft.@).





[28]See
id. '
15.01(a) (Vernon 2003).





[29]See
Wolfe v. State, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996); Babineaux
v. State, Nos. 01-06-00608-CR, 01-06-00609-CR, 2007 WL 1953693, at *6B7
(Tex. App.CHouston
[1st Dist.] July 6, 2007, pet. ref=d) (mem. op., not designated
for publication). 





[30]As a
result of his injuries, Shahid spent almost two months in the hospital,
including thirty-five days in a coma.   





[31]The
record reflects that Shahid pointed to the back of the courtroom when asked to
identify the man who shot him. 





[32]Fernandez
did not report her vehicle stolen, and the indictment alleged that Shahid was
the victim of both offenses. 





[33]Concerned
that Shahid might not survive his injuries, Detective Caudle showed the photo
spread to Shahid while he was in the hospital, had just come out of surgery,
and was Astill
a little groggy@ and
mumbling.  Shahid identified appellant by
pointing to his photograph, and he made the same identification three times
with a five minute break in between each showing.  At one point, Shahid asked the detective, A[I]f
I show you who shot me, will you get m[e] some pain medicine.@ 





[34]Fernandez
did not testify.





[35]The
jury watched this video and also listened to the tape of the 911 call. 





[36]See,
e.g., Hart v. State, 581 S.W.2d 675, 678 (Tex. Crim. App. [Panel
Op.] 1979) (holding that Aputting
[a] weapon to use to inflict injuries clearly goes beyond preparation@); Henderson
v. State, No. 03‑96‑00446‑CR, 1998 WL 53967, at *7B8
(Tex. App.CAustin
Feb. 12, 1998, no pet.) (not designated for publication) (holding that evidence
was sufficient to establish attempted aggravated robbery when appellant=s
statement showed the requisite intent and his actions included bringing a
loaded gun).





[37]See Tex. Penal Code Ann. '
29.01(1).