**Thessalonians LANGS, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1763–04.**

Court of Criminal Appeals of Texas.

Jan. 25, 2006.

Barry J. Alford, Fort Worth, for Appellant.

Sylvia Mandel, Asst. Criminal District Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the unanimous Court.

In this case we reiterate that the face of the trial record must clearly show a double jeopardy violation before a defendant may successfully raise a "multiple punishment" double jeopardy claim for the first time on appeal.[1]

Appellant was convicted of two offenses: burglary of a habitation and retaliation. Under the disjunctive application paragraph of the charge, the jury could convict appellant of burglary of a habitation under either of two theories: (1) entry with the intent to commit retaliation; or (2) entry and the commission (or attempted commission) of retaliation. The general verdict form did not require the jury to specify which theory it relied upon.

On appeal, appellant claimed that his two convictions constituted multiple punishment in violation of the Double Jeopardy Clause because the jury *could have* rested its verdict on the second burglary theory which made retaliation a lesser-included offense of burglary.[2] The court of appeals held that appellant failed to preserve his double jeopardy claim because he did not object to the disjunctive

---

1. We granted appellant's sole ground for review:

   Did the court of appeals err in finding appellant's double jeopardy complaint regarding multiple punishments for the same offense was not preserved for appellate review?

2. *Langs v. State*, No. 2–03–133–CR, 2004 WL 2008623, at *1, 2004 Tex.App. LEXIS 8287 at *1 (Tex.App.-Fort Worth 2004) (not designated for publication).

jury charge at trial.[3] We agree and affirm that decision.

## I.

At trial, the evidence showed that appellant and Amanda had been involved in a four-year relationship that Amanda ended on November 3, 2001. That very night, appellant physically assaulted Amanda. She filed criminal charges against him. Appellant then embarked upon a campaign to harass and threaten Amanda into dropping the assault charge.

Appellant's campaign began with phone calls. Soon after the November 3rd assault, both appellant and his family called Amanda to persuade her to drop the charges. Amanda repeatedly refused and asked them to leave her alone. On December 3rd, appellant fabricated a story about his father recently dying to garner Amanda's sympathy. She again refused to meet with him and again asked him to leave her alone. Amanda was so distraught that she contacted the police, and they cited appellant for criminal trespass.

On December 5th, appellant contacted one of Amanda's friends and asked her a series of detailed questions to find out exactly where Amanda would be throughout the day. Concerned, Amanda's friend contacted Amanda to tell her about the conversation with appellant. Amanda felt scared and decided to spend the night at her mother's house.

That night, while Amanda slept, appellant knocked on the door of her mother's home. When Amanda's mother, Vickie, answered the door, appellant declared that he needed to see Amanda. Vickie told him to wait outside, and she shut the door behind her. Nonetheless, appellant barged through the door, went to Amanda's bedroom, grabbed her arm, and pulled her from her bed. Amanda told appellant, "You're not supposed to be here and you need to leave." Appellant ignored her. He dragged her out of her bedroom, bumping her shoulder against the walls, while she "was screaming 'No' the whole way down the hall." Appellant pulled her out to his car, demanding that she sign an affidavit of non-prosecution. He fled in his car when police officers drove up to the house.

At the conclusion of the trial, the judge instructed the jury on both burglary of a habitation and retaliation.[4] Under the burglary application paragraph, the jury

---

3. *Langs*, 2004 WL 2008623, at *1, 2004 Tex. App. LEXIS 8287 at *6.

4. The jury charge's burglary application paragraph read:

    Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of December, 2001, in Tarrant County, Texas, the Defendant, Thessalonians Langs, did intentionally or knowingly, without the effective consent of Amanda Proctor, the owner thereof, enter a habitation with intent to commit retaliation; or if you find from the evidence beyond a reasonable doubt that on or about the 6th day of December, 2001, in Tarrant County, Texas, the Defendant, Thessalonians Langs, did intentionally or knowingly, without the effective consent of Amanda Proctor, the owner thereof, enter a habitation and did attempt to commit or commit retaliation, then you will find the defendant guilty of offense of burglary of a habitation with intent to commit retaliation or attempted retaliation, as charged in Count One of the indictment.

    Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of offense [sic] of burglary of a habitation with intent to commit retaliation or attempted retaliation, as charged in Count One of the indictment, and say by your verdict "Not Guilty."

The jury charge's retaliation application paragraph read:

    Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of December, 2001, in Tarrant County, Texas, the Defendant, Thessaloni-

could find that appellant entered a habitation without the effective consent of the owner and either: (1) entered with the intent to commit retaliation; or (2) after entering, attempted to commit or committed retaliation. The verdict form required only that the jury indicate whether it found appellant guilty of burglary of a habitation and whether it found him guilty of the separate offense of retaliation. Appellant did not object to the burglary application paragraph or the general verdict form.[5]

The jury found appellant guilty of both offenses and assessed his punishment at fifteen years' imprisonment for the burglary and ten years for the retaliation offense. Although appellant filed a motion for new trial, he made no double jeopardy claim.

On appeal, appellant claimed that the disjunctive application paragraph could have allowed a double jeopardy "multiple punishments" violation because the jury might have convicted appellant of burglary based on the second theory—one based on retaliation as a lesser-included offense. The court of appeals, relying on our opinion in *Gonzalez v. State*,[6] held that "an objection is required to preserve a double jeopardy complaint when the face of the record fails to show a multiple punishment violation."[7] Because the jury's verdict "could have rested on paragraph one, which alleged burglary with intent to commit retaliation, the record does not necessarily show on its face a multiple punishment violation."[8]

ans Langs, did then and there intentionally or knowingly threaten to harm another, to-wit: Amanda Proctor, by an unlawful act in retaliation for or on account of the services or status of the said Amanda Proctor as a prospective witness, said unlawful act being, pulled Amanda Proctor from the bed in which she was sleeping, and pulled her down a hall to the door while threatening to harm her, without her consent in order to have her sign an affidavit of non-prosecution in the Defendant's pending assault bodily injury family violence case, and said threat was communicated to Amanda Proctor in person; or if you find from the evidence beyond a reasonable doubt that on or about the 6th day of December, 2001, in Tarrant County, Texas, the Defendant, Thessalonians Langs, did then and there intentionally or knowingly threaten to harm another, to-wit: Amanda Proctor, by an unlawful act in retaliation for or on account of the services or status of the said Amanda Proctor as a person who has reported the occurrence of a crime, said unlawful act being, pulled her down a hall to the door while threatening to harm her without her consent in order to have her sign an affidavit of non-prosecution in the Defendant's pending assault bodily injury family violence case, and said threat was communicated to Amanda Proctor in person, then you will find the defendant guilty of the

offense of retaliation, as charged in Count Two of the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of retaliation, as charged in Count Two of the indictment, and say by your verdict "Not Guilty."

5. In fact, the final phrase of the application paragraph, the "converse" charge, and the verdict form stated that the State was required to prove that appellant entered the habitation "with intent to commit retaliation or attempted retaliation as charged in Count One." This wording is ambiguous and suggests that the State was, under either paragraph, required to prove a culpable mens rea of either (1) intent to commit retaliation; or (2) intent to commit attempted retaliation at the moment appellant crossed the threshold. However, neither the litigants, the trial court, or the court of appeals have ever mentioned this wording or its possible ambiguity, so we will assume that this wording was not confusing to them.

6. 8 S.W.3d 640, 645 (Tex.Crim.App.2000).

7. *Langs*, 2004 WL 2008623, at *1, 2004 Tex. App. LEXIS 8287 at * 3.

8. *Id.* 2004 WL 2008623, at *1, 2004 Tex.App. LEXIS 8287 at *6.

685

In this Court, appellant contends that the court of appeals erred by failing to apply the more nuanced analysis in *Ex Parte Ervin*[9] to determine if a double jeopardy violation was clearly apparent from the record's face.

## II.

■ There are three distinct types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.[10] A multiple punishments claim can arise in two contexts:

(1) the lesser-included offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for that same conduct plus more (for example, attempted assault of Y and assault of Y; assault of X and aggravated assault of X);[11] and

(2) punishing the same criminal act twice under two distinct statutes

when the legislature intended the conduct to be punished only once (for example, causing a single death by committing both intoxication manslaughter and involuntary manslaughter).[12]

■ The "same elements" test first articulated by the United States Supreme Court in *Blockburger v. United States*[13] is used to determine if two convictions constitute "multiple punishment" under the Double Jeopardy Clause:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.[14]

This Court adopted the *Blockburger* test long ago, and we continue to apply it as the first means of analyzing a multiple-punishment double-jeopardy claim when the legislature's intent is not clearly expressed.[15]

9. 991 S.W.2d 804 (Tex.Crim.App.1999).

10. *Cervantes v. State*, 815 S.W.2d 569, 572 (Tex.Crim.App.1991).

11. *See, e.g., Brown v. Ohio*, 432 U.S. 161, 168–69, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (joyriding is a lesser-included offense of theft of an automobile).

12. *See Ex parte Ervin*, 991 S.W.2d at 816–17 (double jeopardy bars conviction for both manslaughter and intoxicated manslaughter of the same victim); *see generally, Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) ("The assumption underlying the [*Blockburger*] rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent").

13. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

14. *Id.* at 304, 52 S.Ct. 180.

15. *See, e.g., Rice v. State*, 861 S.W.2d 925 (Tex.Crim.App.1993); *Jones v. State*, 514 S.W.2d 255 (Tex.Crim.App.1974). In *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the Supreme Court stated that legislative intent is the primary consideration in any multiple-punishment double jeopardy claim. *Id.* at 368–69, 103 S.Ct. 673. Thus, when

a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

When a defendant is convicted of both burglary and a separate felony committed during that burglary, a *Blockburger* multiple-punishment analysis depends on the type of burglary charged. It is well-settled that a defendant may not be punished for both the underlying felony and burglary if the burglary allegation is that the defendant entered a home without the consent of the owner and *then* committed the underlying felony within the home as defined in § 30.02(a)(3).[16] Thus, the State may obtain either a burglary or the underlying felony (or theft or assault) conviction if it alleges a burglary under Section 30.02(a)(3) of the Penal Code,[17] but not both. Under *Blockburger*, burglary under Section 30.02(a)(3) requires proof of a fact that the felony charge does not, namely, entry without consent. However, to prove the burglary charge, the State must prove all of the elements of the underlying felony. Thus, the felony offense would not require proof of an additional element that the burglary offense does not also require.[18]

Conversely, it is equally well settled that a substantive felony and a burglary by entering a home without the consent of the owner and with the *intent* to commit that felony are two distinct offenses.[19] The entry of the home with felonious intent and the felony committed within are two distinct criminal acts, and each requires the State to prove an element that the other does not. A person charged with burglary under Section 30.02(a)(1)[20] is guilty of that offense the moment that he crosses the threshold of a habitation without consent and with the intent to commit the underlying felony.[21] It matters not whether he actually does commit that felony or even if he attempts to commit it.

### III.

In this case, appellant's two convictions may or may not violate the double jeopardy clause. Because of the jury charge and structure of the verdict form, we cannot be certain whether the jury relied upon the first (entry with intent to commit a felony) or second (entry and then commission of a felony) burglary theory. This court has, however, made it clear that a potential multiple-punishment double-jeopardy claim may be forfeited if a defendant does not properly preserve that claim.[22]

*Id.*

16. *Morgan v. Devine*, 237 U.S. 632, 638, 35 S.Ct. 712, 59 L.Ed. 1153 (1915) ("An allegation simply of breaking, entering, and stealing states the burglary in a form which makes it single, and a conviction therefor will bar an indictment for the larceny or the burglary alone.")

17. TEX. PENAL CODE § 30.02(a)(3) ("A person commits an offense if, without the effective consent of the owner, the person ... enters a building or habitation and commits or attempts to commit a felony, theft, or an assault").

18. *See Blockburger*, 284 U.S. at 304, 52 S.Ct. 180.

19. *Jones*, 514 S.W.2d at 256.

20. TEX. PENAL CODE § 30.02(a)(1) ("A person commits an offense if, without the effective consent of the owner, the person ... enters a habitation ... with intent to commit a felony, theft, or an assault").

21. *See Garcia v. State*, 571 S.W.2d 896, 899 (Tex.Crim.App.1978) (noting that "the offense of burglary [under § 30.02(a)(1)] may be complete whether any theft ever occurs or not. If the burglarious entry is made with the intent to commit a felony or theft, the offense is complete whether any felony or the crime of theft ever subsequently happens").

22. *Gonzalez*, 8 S.W.3d at 642–43. We explained:

> Our case-law on preservation of double jeopardy claims is not a model of clarity. The overriding principles expressed by this

■ When offenses, one of which could give rise to a multiple-punishment double-jeopardy violation, are listed disjunctively in a jury charge, the burden is upon the defendant to "preserve, in some fashion a double jeopardy objection at or before the time the charge is submitted to the jury." [23]

In *Gonzalez*, we held that because of the "fundamental nature of the double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack" if two conditions are met: (1) "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record"; and (2) "when enforcement of the usual rules of procedural default serves no legitimate state interest." [24]

■ Morever, in *Gonzalez*, we reasoned that, when separate theories for an offense are issued to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is

sufficient evidence to support that valid theory. [25] The fact that the jury's verdict *could* have relied on a theory that would violate the Double Jeopardy Clause, is not sufficient to show a constitutional violation "clearly apparent on the face of the record." [26]

■ Here, as the court of appeals noted, the jury was instructed on one burglary theory that does not constitute a multiple-punishment violation and, as discussed below, there is sufficient evidence to support the verdict under that theory. Thus, a double jeopardy violation is not clearly apparent from the face of the record.

Appellant argues that the court of appeals, nonetheless, should have looked beyond the "same elements" test and analyzed the jury charge under the multiple-punishment discussion set out in *Ervin*. [27] In *Ervin*, this Court noted that, in certain limited circumstances, the *Blockburger* "same elements" test is not the sole test for analyzing a multiple-punishment claim. [28] In that case, the defendant killed

case-law are that, because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests. *Id.* (footnotes omitted). We hastily added, "This, however, does not amount to a holding that all multiple punishments claims may be raised for the first time on appeal." *Id.* at 645. Thus, requiring a defendant "to have timely raised his multiple punishments claim in the trial court serves legitimate state interests and is consistent with the underlying policies of the general rules of procedural default" when the jury is charged on multiple theories of committing a crime, at least one of which could *potentially* raise a multiple-punishments double-jeopardy claim. *Id.* "Timely raising the matter in the trial court would

have provided the trial court and the prosecution an opportunity to remove the basis of the objection, and it also would have provided the prosecution the opportunity to obtain" a conviction on, for example, a burglary charge by entering with the intent to commit a felony, "without the risk of an unnecessary retrial in the face of a valid multiple punishments claim." *Id.* at 645–46.

23. *Gonzalez v. State*, 973 S.W.2d 427, 431 (Tex.App.-Austin 1998), *aff'd*, 8 S.W.3d 640 (Tex.Crim.App.2000).

24. *Gonzalez*, 8 S.W.3d at 643 (footnotes omitted).

25. *Id.* at 641–42.

26. *Id.* at 643.

27. 991 S.W.2d at 814.

28. *Id.* at 814.

a single person while driving a vehicle in an intoxicated state.[29] He was charged with two crimes: manslaughter and intoxication manslaughter.[30] The "same elements" test would not indicate a double jeopardy violation for these offenses because each offense required an element that the other did not. Manslaughter requires "recklessness," which is not required for intoxication manslaughter, while intoxication manslaughter requires "intoxication" and "operation of a motor vehicle in a public place," which are not required for manslaughter.[31]

Although the two offenses passed the "same elements" test, we held that appellant could not be convicted of both offenses.[32] Relying on United States Supreme Court precedent,[33] we noted that the ultimate inquiry in a double jeopardy analysis is whether the legislature intended to impose multiple punishments.[34] Because legislative intent, rather than the presence or absence of the "same elements" is the ultimate inquiry, the "same elements" test, although the usual method for discerning legislative intent, "cannot authorize two punishments where the legislature clearly intended only one," nor, conversely, "negate a clearly expressed legislative intent to impose multiple punishments." [35] Since legislative intent is the ultimate end that the "same elements" test

seeks, we held that, under the circumstances of that case, other factors relevant for discerning the legislature's intent should also be considered.[36]

However, the legislative intent is clear in regards to the offenses at issue in appellant's case. Burglary with intent to commit an underlying felony within, and the underlying felony have long been held to be distinct and separate offenses.[37]

■ Appellant's claim is thus without merit. In this case, the jury could have convicted appellant both for the burglary of a habitation and the underlying felony of retaliation without violating the double jeopardy clause prohibition of multiple punishments. Moreover, ample facts in this record support the jury's verdict that appellant entered Amanda's mother's home with the intent to commit retaliation against Amanda:

- Appellant had repeatedly attempted to persuade Amanda to drop the assault charge against him;

- He had repeatedly harassed her over the telephone;

- He had fabricated a story about his father's death in an attempt to gain access to her own home;

29. *Id.* at 805.

30. *Id.* at 806.

31. *Id.*

32. *Id.* at 817.

33. *Ball v. United State*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985); *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

34. *Ervin*, 991 S.W.2d at 807.

35. *Id.*

36. *Id.* at 814.

37. Indeed, there was once an explicit Texas statute that said so. *See Jones*, 514 S.W.2d at 256, in which we noted:

> Any confusion as to whether burglary of a private residence at night with intent to commit rape and rape itself are separate and distinct offenses is removed by the statutes in force at the time of appellant's conviction. Articles 1399 and 1400, Vernon's Ann. P.C., explicitly provide that a person may be prosecuted for burglary and for any offense which he commits after entry.

*Id.*

He had closely questioned a friend of hers to find out exactly where she would be at all times that day;

When he entered Amanda's mother's home, without permission, he immediately went to find Amanda and pull her out of bed;

He snatched her out of bed, dragged her down the hall, bumping her against the walls in the process;

During this scramble, he repeatedly told Amanda that he needed her to sign an affidavit of non-prosecution;

He pulled her outside to his car where he had the paper for her to sign.

This was clearly a man on a mission. The jury had ample evidence to conclude that appellant had the intent to threaten to harm Amanda and make her sign an affidavit of non-prosecution at the very moment that he crossed the threshold of her mother's home. Because the evidence is clearly sufficient to support the jury's verdict that appellant committed burglary with the intent to commit a felony inside, no double jeopardy violation is clearly apparent on the face of the record. Thus, appellant failed to satisfy the first prong of *Gonzalez.*

Appellant failed to object to the disjunctive jury charge at trial and failed to meet the requirements in *Gonzalez* which would allow him to raise a potential double jeopardy violation for the first time on appeal. Thus, the court of appeals properly held that appellant was barred from raising his double jeopardy claim in that court on direct appeal. We therefore affirm the judgment of the lower court.