# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00853-CV

**In the Matter of E. G.**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-23,668, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

E.G. was found to have engaged in delinquent conduct by committing burglary of a habitation and theft of property valued at $50 or more but less than $500. *See* Tex. Fam. Code Ann. § 51.03 (West Supp. 2008); Tex. Penal Code Ann. § 30.02 (West 2003), § 31.03 (West Supp. 2008). The juvenile court placed E.G. on probation for one year in his mother's custody. E.G. contends that the findings of guilt are not supported by the evidence. He also contends that the juvenile court subjected him to double jeopardy by finding that he committed both burglary and theft. We will modify the judgment of delinquency to delete the theft finding and affirm the judgment as modified.

At 1:30 p.m. on December 23, 2004, Vesta Storms returned to her apartment from a shopping trip to discover that someone had kicked open the front door, entered the apartment, and stolen jewelry, audio and video discs, a video game machine, a karaoke machine, and a subwoofer. Storms was able to provide receipts for only some of the stolen property, but she testified that her total loss was at least $1,200.

Storms testified that three days before the burglary, E.G., his cousin E.M. (who lived in the same apartment complex), and a third boy named R.A. (who also lived nearby) had come to her apartment to visit her boyfriend. She testified that on this occasion, R.A. had kicked at her door and the boys had "pushed their way" into the apartment. Storms said that while E.G. was in the apartment on December 20, he pointed to several items and told her that she should give them to him; these items were among those stolen. She characterized E.G.'s attitude that day as "intimidating." Storms also testified that on December 23, about thirty minutes before she returned home to find that her apartment had been burglarized, she received a cell phone call from E.M. inquiring where she and her boyfriend were. She said that she could hear E.M.'s cousins in the background "hollering" and "laughing." Storms testified that after discovering the burglary and calling the police, she went to E.M.'s apartment where she found him, E.G., and a third cousin standing outside. Storms acknowledged that she did not see any of her stolen property in the possession of E.G. or the other boys.

Vivian Valdez, R.A.'s mother, testified that on the night of January 10, 2005, she entered R.A.'s bedroom and found him standing at his window. E.G. was outside the window holding a karaoke machine.[1] Valdez asked her son what was happening, and R.A. told her that E.G. had come by "to pick up his stuff." E.G. told Valdez the same thing. Valdez told E.G. to leave and he did so, saying, "I'll be back for my other stuff." Angry at his mother, R.A. immediately left the

_____

[1] Valdez testified that she did not recognize the object as a karaoke machine, and that she was later told that that is what it was.

2

apartment and did not return. On January 13, Valdez reported her son missing. She later discovered a subwoofer in R.A.'s closet.

Deputy Justin Rowland investigated both the burglary at Storms's apartment and R.A.'s disappearance. Rowland took a photograph of the subwoofer found by Valdez and showed it to Storms, who identified it as the one stolen from her apartment. Rowland testified that he never saw or found the stolen karaoke machine.

E.G.'s mother, Gloria DeLaPaz, testified that on January 10, 2005, she and E.G. were visiting her brother and his son, E.M., when E.M. received a telephone call from R.A. R.A. offered to sell a karaoke machine for $75. DeLaPaz testified that E.G. wanted to purchase the machine and that she agreed to give him the money. She drove E.G. to R.A.'s apartment where, at about 10:30 p.m., she watched E.G. go to the front door and then to the window, where the purchase was made. She could not hear what was said. DeLaPaz testified that neither she nor E.G. knew at the time that the karaoke machine was stolen, and that she saw nothing unusual in the circumstances of the transaction.

E.G. testified that he purchased the karaoke machine from R.A. as his mother described and gave it to his brother, who still had it. E.G. denied ever being inside Storms's apartment. E.G. testified that he had never met R.A. before the night he purchased the karaoke machine from him. E.G. denied knowing that the karaoke machine was stolen.

The petition alleged that on or about December 23, 2005, E.G. entered Storms's residence without her effective consent and attempted to commit and committed theft. *See* Tex. Penal Code Ann. § 30.02(a)(3) (West 2003). The petition further alleged that on the same date,

3

E.G. acquired and exercised control over property belonging to Storms and worth $50 or more, "namely Karokee [*sic*] Machine, woofer and speaker," without Storm's effective consent and with the intent to deprive her of the property. *See id*. § 31.03(a), (b)(1) (West Supp. 2008).

At the conclusion of the adjudication hearing, the court announced its findings as follows:

> Okay. Well, let me start out by saying, first of all, that [E.G.], your testimony is unbelievable, and, [E.G.], your mother's testimony is unbelievable, which leaves me with Ms. Storms and Ms. Valdez.
>
> Ms. Storms may have an ax to grind. Ms. Valdez doesn't. Her testimony is very clear that she saw you at the window of her son's room taking property and saying I'll come back for the rest of my stuff. As it turns out, that fits very nicely with the stuff that was taken from Ms. Storms's apartment, the exact items. And so I can only conclude that you got that stuff from—that it is your stuff because you said it was, and that you got it from the apartment of Ms. Storms because it matched the stuff that was stolen from her apartment. So I find the charges to be true.

In his first and third issues, E.G. contends that the evidence is legally and factually insufficient to sustain the court's finding that he committed the burglary. The State contends that E.G. failed to preserve his factual sufficiency complaint because he did not file a motion for new trial. *See* Tex. R. Civ. P. 324(b)(2); Tex. Fam. Code Ann. § 51.17(a) (West Supp. 2008); *In re J.B.M.*, 157 S.W.3d 823, 827 (Tex. App.—Fort Worth 2005, no pet.). E.G.'s adjudication hearing was a bench trial, however, and rule 324(b)(2) applies only to jury findings. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 197 (Tex. App.—Austin 1992, no writ). The factual sufficiency complaint is properly before us.

Adjudications of delinquency are based on the criminal standard of proof. Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2008). Therefore, we review the sufficiency of the evidence by

4

applying the standards applicable to challenges to the sufficiency of the evidence in criminal cases. *In re E.P.*, 963 S.W.2d 191, 193 (Tex. App.—Austin 1998, no pet.). In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In a factual sufficiency review, we view all the evidence in a neutral light and determine whether the verdict is clearly wrong and manifestly unjust or against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

There is no dispute that Storms's apartment was burglarized. The only question is whether E.G. was shown to have committed the burglary. *See* Tex. Penal Code Ann. § 7.01(a) (West 2003) (defining "party"). Because no one saw E.G. in or near the apartment at the time of the burglary, the evidence is necessarily circumstantial. In a circumstantial evidence case, it is unnecessary for every fact to point directly and independently to the accused's guilt; it is enough if the finding of guilty is warranted by the cumulative force of all the incriminating evidence. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

The following circumstances point to E.G.'s involvement in the burglary:

• E.G., his cousin E.M., and R.A. pushed their way into Storms's apartment three days before the burglary. While there, E.G. behaved in an intimidating manner and indicated that he wanted some of the property later taken in the burglary.

• Thirty minutes before Storms returned home and discovered the burglary, she received a call from E.M. wanting to know her whereabouts. Storms could hear E.M.'s cousins laughing in the background.

5

• After discovering the burglary, Storms went to E.M.'s apartment in the same complex and found him, E.G., and a third cousin standing outside.

• At 10:30 p.m. on January 10, two-and-a-half weeks after the burglary, R.A. was seen by his mother handing E.G. a karaoke machine through his bedroom window. E.G. told Valdez that he was "pick[ing] up his stuff." A karaoke machine was stolen during the burglary.

• E.G. told R.A. on January 10 that he would be "back for my other stuff." Valdez later found the subwoofer stolen during the burglary in R.A.'s bedroom closet. In his own testimony, E.G. did not deny or explain this remark.

Viewing these incriminating circumstances in the light most favorable to the result, we hold that their cumulative force is legally sufficient to support a finding beyond a reasonable doubt that E.G. was a party to the burglary at Storms's apartment.

Unquestionably, there are weaknesses in the State's case when the circumstances are viewed in a neutral light. E.G. denied ever being in Storms's apartment. The karaoke machine E.G. received from R.A. was not positively identified as the machine stolen from Storms's apartment, and both E.G. and his mother testified that this was an innocent purchase. The subwoofer in R.A.'s closet, which was identified by Storms, was never shown to be in E.G.'s physical possession.

The trier of fact alone determines the weight to place on contradictory testimony because that determination depends on an evaluation of credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We may not substitute our judgment for that of the juvenile court simply because we disagree with the court's verdict. *Id*. at 407. The juvenile court expressly found both E.G. and his mother to be unbelievable witnesses. Giving this determination the deference it is due, we hold that the evidence supporting the court's finding that E.G. committed

6

the burglary is not so weak as to make the finding clearly wrong or manifestly unjust, and that the court's finding is not against the great weight and preponderance of the available evidence.

In his remaining issues, E.G. contends that the evidence is insufficient to sustain the juvenile court's finding that he engaged in delinquent conduct by committing theft, and that the findings that he committed both burglary and theft constituted double jeopardy. *See Breed v. Jones*, 421 U.S. 519, 531 (1975); *In re J.R.R.*, 696 S.W.2d 382, 384 (Tex. 1985). We agree with both of these contentions.

Although Storms testified that a considerable amount of property was stolen during the burglary, the petition accused E.G. of stealing only a karaoke machine, a subwoofer, and a speaker. There is no evidence that a speaker other than the subwoofer was stolen, and there is no evidence of the subwoofer's value. The karaoke machine was shown to have a value of $47.76. In the absence of aggravating circumstances not present here, theft of property valued at less than $50 is a class C misdemeanor. Tex. Penal Code Ann. § 31.03(e)(1)(A) (West Supp. 2008). A class C misdemeanor is punishable only by a fine. *Id*. § 12.23 (West 2003). The violation of a penal law that is not punishable by imprisonment or confinement in jail does not constitute delinquent conduct. Tex. Fam. Code Ann. § 51.03(a)(1) (West Supp. 2008).

In addition to having no evidentiary support, it is apparent from the record that the juvenile court's theft finding violated the double jeopardy guarantee against multiple punishments for the same offense. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). The petition alleged that E.G. entered Storms's habitation and attempted to commit and committed theft. *See* Tex. Penal Code Ann. § 30.02(a)(3). It was necessary for the State to prove all the elements of

7

the theft in order to prove the burglary. *Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006). Because all the elements of the theft were included within the burglary, the two offenses were the same for double jeopardy purposes. *Id.* We will not lengthen this opinion by addressing the State's arguments to the contrary, which we find to be without merit.

We overrule E.G.'s challenges to the juvenile court's finding that he engaged in delinquent conduct by committing burglary. We sustain E.G.'s challenges to the court's finding that he engaged in delinquent conduct by committing theft. Because the burglary finding necessarily included a finding that E.G. committed theft, it is not probable that the court's error caused the rendition of an improper disposition order. *See* Tex. R. App. P. 44.1(a); *see also In re C.P.*, 925 S.W.2d 151, 152 (Tex. App.—Austin 1996, writ denied). Therefore, we modify the juvenile court's judgment to delete the finding that E.G. engaged in delinquent conduct by committing theft, and we affirm the judgment as modified.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Modified and, as Modified, Affirmed

Filed:   December 10, 2008

8