# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00308-CR

**Willie Marshall, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. D-1-DC-08-301920, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Willie Marshall of four counts of sexual assault of a child, *see* Tex. Penal Code Ann. § 22.011(a)(2) (West 2011), two counts of indecency with a child by contact, *see id*. § 21.11(a)(1) (West 2011), and four counts of indecency with a child by exposure, *see id*. § 21.11(a)(2) (West 2011). The indictment alleged that Marshall committed two of the sexual-assault offenses and three of the indecency offenses "on or about" December 1, 2005, and committed the remaining sexual-assault and indecency offenses "on or about" June 15, 2006. The jury assessed punishment at eight years' imprisonment and a $2,000 fine for the sexual-assault offenses, six years' imprisonment for the indecency-by-contact offenses, and four years' imprisonment for the indecency-by-exposure offenses. The trial court entered an order that cumulated punishment and ordered Marshall to serve the sentences consecutively. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2011) (defining when cumulation of sentences is permitted); Tex. Penal Code Ann.

§ 3.03(b)(2)(A) (West 2011) (permitting cumulation of child-sex-abuse offenses arising out of same criminal episode). Marshall argues that because one necessarily commits indecency in the course of committing sexual assault, the fact that the indictment listed the same dates for his indecency and sexual-assault offenses means that the former must have been "part of" the latter. As a result, Marshall argues, the trial court (1) violated the prohibition against double jeopardy, *see* U.S. Const. amend. V, by convicting him for both indecency and sexual-assault offenses and (2) violated Texas law that prohibits cumulating sentences for child-sex-abuse offenses where one of the offenses is "part of" the other offense. For the following reasons, we affirm the conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence showed that in early 2005, Marshall started dating a woman named B.C.[1] In the spring of 2005, Marshall moved into B.C.'s home. B.C.'s daughter, K.C., also lived in the home. She was sixteen years old at the time.

Marshall became unemployed shortly after moving into the home, and B.C. worked to support herself, Marshall, and K.C. She usually worked from 2 p.m. to 10 p.m. and so was out of the home during that time. Marshall, on the other hand, was usually at home during that time. K.C. was usually at home from 4:30 p.m. on, after she got home from school.

During the spring of 2005, B.C. briefly allowed K.C.'s boyfriend to live in the home, but she kicked him out after discovering that he and K.C. were having sex. K.C. was upset that her mother had kicked out her boyfriend, and Marshall told K.C. that he would help her spend more time

---

[1] We use the woman's initials to protect the identity of her daughter, who was the victim in this case.

with her boyfriend if she would let Marshall have sex with her one time. K.C. initially resisted but eventually agreed. K.C. testified that Marshall asked her to remove her clothes, but she did not, so Marshall removed them for her. K.C. lay down on a bed, and Marshall lay on top of her and had sex with her. K.C. testified that she saw Marshall's penis on that occasion and that Marshall saw her naked from the waist down.

Roughly a week later, Marshall told K.C. that "circumstances had changed" and that she would have to have sex with him again if she wanted his help in seeing her boyfriend. The two had sex again. Their sexual encounters gradually increased in frequency from roughly once a week to two or three times a week. K.C. testified that every time they had sex, Marshall's penis penetrated her vagina. Marshall also repeatedly touched her breasts and vagina, put his penis in K.C.'s mouth once, and put his mouth on K.C.'s genitals on more than one occasion. K.C. testified that Marshall initially wore a condom during their sexual encounters but eventually stopped, telling K.C. not to worry about getting pregnant because he "pulled out" before ejaculating. K.C. did not tell anyone about her sexual relationship with Marshall because she was afraid that she would not be believed or that Marshall would hurt her.

Some time after Marshall began having sex with K.C., B.C., who could not conceive children, asked K.C. if she would be willing to serve as a surrogate mother for her. Although B.C. did not explain how this would work, K.C. assumed that B.C. meant K.C. would go to a fertility clinic and have her mother's eggs placed inside her body. K.C. did not believe that B.C. knew she and Marshall had been having sex when B.C. made the surrogacy proposal. K.C. told B.C. that she wanted to finish high school before considering surrogacy, and B.C. said that was fine because she and Marshall were in no hurry to have a child.

3

Meanwhile, Marshall continued having sex with K.C., and in August of 2006 K.C. discovered that she was pregnant. K.C. told Marshall about the pregnancy and told him she was worried that it would lead to B.C. discovering that she and Marshall had been having sex. Marshall told K.C. that he would think of a solution. Eventually, he decided to tell B.C. that K.C. had impregnated herself using a syringe filled with his sperm. To K.C.'s surprise, B.C. believed the story but was upset that K.C. and Marshall had conceived a child so soon.

K.C. delivered a baby in March of 2007. The baby's conception date was estimated at July 9, 2006. A DNA test confirmed that Marshall was the father. Marshall and B.C. told K.C. that she was not allowed to bond with the baby because they were going to raise it as their own.

After K.C. delivered the baby, her gynecologist told her not to have sex for six weeks. Roughly four weeks after the delivery, however, Marshall approached K.C. and told her that he wanted to have sex. K.C. testified that she resisted but Marshall forced himself on her, taking off her pants and penetrating her vagina with his penis.

K.C. eventually moved out of Travis County to live with a new boyfriend. Marshall continued contacting K.C. after she moved, sending text and picture messages to her cellular telephone. Approximately two weeks after K.C. moved, Marshall sent K.C. a picture of her bare breasts and another picture of his penis next to K.C.'s genitals. K.C. testified that Marshall had held her down to take the pictures some months earlier. K.C. deleted the pictures without responding to them. Marshall later sent the picture of K.C.'s breasts to K.C.'s new boyfriend. The boyfriend asked K.C. about the picture, and for the first time K.C. shared the details of her history with Marshall. K.C.'s boyfriend shared the information with K.C.'s biological father, and eventually the men persuaded K.C. to go to the police. The charges at issue in this appeal followed.

4

Marshall pleaded not guilty and proceeded to a jury trial. K.C. testified to the above details. Marshall testified that he had never had sex with K.C. and that she did in fact impregnate herself using a syringe filled with his sperm. B.C. also testified, claiming that she believed Marshall had never had sex with K.C.

The jury returned a verdict of guilty on all ten counts contained in the indictment. It assessed punishment at eight years' imprisonment and a $2,000 fine for the sexual-assault offenses, six years' imprisonment for the indecency-by-contact offenses, and four years' imprisonment for the indecency-by-exposure offenses. The trial court entered an order that cumulated punishment and ordered Marshall to serve the sentences consecutively. Marshall appeals.

## DISCUSSION

Marshall advances two points of error:

1. "It is a violation of double jeopardy to convict and punish a person for two offenses from the same transaction when one of the offenses is part of the greater offense such that the greater offense could not be committed without the lesser."

2. "It is a violation of art. 42.08, Tex. Code Crim. Proc.[,] and sec. 3.03, Tex. Penal Code[,] to cumulate sentences for offenses in the same transaction where one offense could not be committed without commission of the other."

We will address these arguments in turn.

### *Double Jeopardy*

First, Marshall argues that convicting him for both sexual-assault and indecency offenses violated the prohibition against double jeopardy. Marshall admits that he did not raise

5

this argument in the trial court and that as a result he failed to preserve error. *See* Tex. R. App. P. 33.1(a)(1)(A). Thus, his double-jeopardy argument will succeed only if the "undisputed facts show the double-jeopardy violation is clearly apparent on the face of the record." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to all states through the Fourteenth Amendment, protects an accused against multiple punishments for the same offense. *Evans v. State*, 299 S.W.3d 138, 140-41 (Tex. Crim. App. 2009) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). Depending on the facts of the case, this prohibition against multiple punishments for the same offense may be implicated when the same conduct is used to support convictions for both indecency with a child and sexual assault of a child. *See Saldana v. State*, 287 S.W.3d 43, 57 (Tex. App.—Corpus Christi 2008, pet. ref'd). Thus, "a conviction for a completed sexual assault bars conviction for conduct [such as indecency with a child] that is demonstrably *part of* the commission of that offense." *Barnes v. State*, 165 S.W.3d 75, 87 (Tex. App.—Austin 2005, no pet.) (emphasis added).[2] The prohibition against multiple punishments for the same conduct is not implicated, however, when a person "commits more than one discrete sexual assault against the same complainant . . . even if the acts were committed in close temporal proximity." *Id*.

It follows that the key to the double-jeopardy analysis in this case is whether Marshall's indecency offenses were "part of" his sexual-assault offenses. If they were, then the trial

---

[2] For example, "penile contact with [the] mouth, genitals, or anus in the course of penile penetration will be subsumed" in the offense of penetration, meaning that it cannot give rise to a separate conviction. *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004).

court erred by imposing separate sentences for them. *See Saldana*, 287 S.W.3d at 57. Marshall argues that because the indictment alleged that he committed all of his indecency offenses "on or about" the same dates that he committed sexual-assault offenses, the indecency offenses must have been "part of" the assault offenses.

In support of this argument, Marshall cites *Patterson v. State*, 152 S.W.3d 88 (Tex. Crim. App. 2004), where the court held that a defendant could not be separately sentenced for indecency with a child and sexual assault of a child where both offenses occurred as part of a single transaction. In *Patterson*, the defendant got into bed with his eleven-year old victim, lay behind her, unbuttoned his pants, grasped her hand, and tried unsuccessfully to make her touch his "private." *Id*. at 90. When the victim pulled her hand away, the defendant pushed his "private" inside her "butt." *Id*. After a short time, the victim got up, went to the bathroom, and then returned to bed, at which time the defendant again tried to force the victim to put her hand on his "private" and, failing again, put his "private" inside her "butt" a second time. *Id*.

Patterson was convicted of two counts of sexual assault (one for causing penetration of the victim's anus by his sexual organ and one for causing the victim's anus to contact his sexual organ), one count of indecency by contact (for touching the victim's anus), one count of attempted indecency by contact (for attempting to cause the victim to touch his genitals), and one count of indecency by exposure (for exposing his genitals knowing child was present). *Id*. at 89. The court of criminal appeals affirmed the sexual-assault convictions and the attempted-indecency-by-contact conviction, but it reversed the indecency-by-contact and indecency-by-exposure convictions on the basis that they violated the constitutional guarantee against double jeopardy. *Id*.

7

Importantly, the court noted that when a defendant is charged with both sexual assault and indecency, the guarantee against double jeopardy only bars prosecution for indecency offenses that, "on the facts of the case, [are] demonstrably part of the commission of the greater offense . . . . *Thus, indecency by exposure may or may not be a part of sexual assault or indecency by contact, depending on the facts of the case*." *Id*. at 92 (emphasis added). On the facts before it, the *Patterson* court held that the indecency offenses were clearly part of the assaultive offenses:

> In this case, there were two essentially identical assaults, separated by a short period of time. On both occasions, appellant exposed his genitals and [then] penetrated the complainant's anus . . . . The record in this case does not show an occasion during the assaults when the exposure was a separate offense. Under the facts of these incidents, exposure was incident to and subsumed by the aggravated sexual assault.

*Id*.

Marshall argues that his case is like *Patterson* because the indictment alleged that he committed all of his indecency offenses "on or about" the same dates that he committed his sexual-assault offenses. Thus, he argues, the indecency offenses must have been "part of" the assault offenses and barred from separate prosecution. We disagree.

"It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). Marshall did not request that the State elect among the many instances of sexual assault and indecency recounted by K.C., and the record does not reflect that the State made an election. *See Phillips v. State*, 193 S.W.3d 904, 912 (Tex. Crim. App. 2006)

8

(on timely request by defendant, State must elect the act on which it will proceed for conviction). Thus, for each offense alleged in the indictment, the State was not bound by the date listed in the indictment; rather, the State could obtain convictions for offenses that occurred on dates other than those listed in the indictment. *See Ex parte Pruitt*, 233 S.W.3d 338, 346 (Tex. Crim. App. 2007) (when evidence proves two or more instances of misconduct, either of which would support conviction for alleged offense, and defendant does not demand an election, the evidence is sufficient for conviction if it adequately proves either instance of misconduct).

Given that the State was not bound by the dates listed for each offense in the indictment, it follows that the State was not locked into proving that each indecency offense occurred on the same date as one or more of the sexual-assault offenses. Logically, if the indecency offenses may have occurred on different days than the assault offenses, then they did not necessarily occur as "part of" the assault offenses. *See Barnes*, 165 S.W.3d at 87 (prohibition against multiple punishments for same conduct not implicated when person commits more than one discrete offense). But Marshall's double-jeopardy argument depends on the indecency offenses having occurred as "part of" the assault offenses. The question, then, is whether there was evidence from which the jury could have concluded that Marshall committed indecency offenses at times that did not make those offenses "part of" Marshall's sexual-assault offenses. If there was such evidence, then no double-jeopardy violation occurred. *See id*.

The record is replete with such evidence. K.C. testified that she and Marshall had sex two or three times a week for over a year and that during their sexual encounters Marshall's penis would penetrate her vagina, Marshall would see her naked body, and she would see his penis.

9

She also testified that on more than one occasion Marshall placed his mouth on her genitals and touched her breasts and genitals with his hands. This testimony indicates numerous separate acts that could support both the assault allegations and the indecency allegations, including acts where contact and exposure did not involve and were not incident to penetration (namely, each time Marshall contacted K.C.'s genitals with his mouth). It is on this basis that *Patterson* is distinguishable—there, each instance of indecency indisputably occurred as "part of" a sexual assault. *See Patterson*, 152 S.W.3d at 92.

In sum, the evidence showed that Marshall committed many discrete acts of indecency and sexual assault, and the State was not required to elect a particular act to support each count in the indictment. Nor was the State bound by the dates in the indictment. It follows that the act supporting each indecency conviction was not necessarily "part of" an act supporting one of the assault convictions. In such circumstances, a double-jeopardy violation is not apparent from the face of the record. *See Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006). Thus, given that Marshall did not raise his double-jeopardy argument below, we must affirm the conviction. *See id*. We overrule Marshall's first point of error.

### *Cumulation of Sentences*

Next, Marshall argues that Texas law prohibits cumulating sentences for offenses that occur in the same transaction "where one offense could not be committed without commission of the other offense."[3] Marshall again cites *Patterson* to support this argument. *See Patterson*,

---

[3] Marshall admits that he did not raise this argument below and that as a result he failed to preserve error. *See* Tex. R. App. P. 33.1(a)(1)(A). This failure is not fatal, however, because "[a]n

10

152 S.W.3d at 92 (Tex. Penal Code § 3.03, which permits cumulation of sentences for child-sexual-abuse offenses, does not permit cumulation "for conduct that, on the facts of the case, is demonstrably part of the commission of the greater [sexual-abuse] offense."). As just explained, however, given the numerous sexual encounters shown by the evidence, Marshall's indecency convictions were supported by conduct distinct from his sexual assaults. As a result, the trial court could properly cumulate the sentences. *See id.* at 91-92 (Texas Penal Code § 3.03 permits cumulation of sentences for repeated sexual offenses against children if convictions are not based on same conduct). We therefore overrule Marshall's second argument.

## CONCLUSION

For the reasons stated above, we affirm the judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Rose

Affirmed

Filed:   March 28, 2012

Do Not Publish

---

improper cumulation order is, in essence, a void sentence, and such error cannot be waived." *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992). We therefore weigh the merits of Marshall's argument.