**Opinion issued April 20, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00197-CR

————————————

## LAMOND JAMES FRANK, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 230th District Court
Harris County, Texas
Trial Court Case No. 1470036

## MEMORANDUM OPINION

The trial court convicted appellant, Lamond James Frank, of burglary of a

habitation with the intent to commit theft.[1] Appellant pleaded true to two

---

[1]    *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011).

enhancement paragraphs and agreed to twenty-five years' confinement in lieu of having the trial court assess his punishment.

In three points of error, appellant argues that the evidence was insufficient to support his conviction because the State failed to prove that he entered the home without effective consent of the owner or that he committed a theft; and he asserts that the trial court erred in admitting a recording of the 9-1-1 call made by the complainant, as it contained impermissible hearsay statements. We conclude that the evidence was sufficient to enable a reasonable factfinder to find beyond a reasonable doubt that appellant entered the home without effective consent and with the intent to commit theft and that the 9-1-1 call conveyed a present sense impression, and, thus, the trial court did not abuse its discretion in admitting it. Accordingly, we affirm.

**Background**

At appellant's trial for burglary of a habitation with intent to commit theft, the complainant, Nicole Griffiths, testified regarding the events of the day the offense occurred. She testified that she left work around 3:00 p.m. and returned to the apartment that she and her roommate, Kevin Harvey, leased together. As she sat down at her table, she noticed that her patio door was open. At first, she believed that door had been left open by the construction crew that was working in her apartment and the one next door to repair damage caused by flooding.

2

However, she then saw appellant jump over her fence and enter her apartment. Griffiths testified that she knew appellant was friends with Harvey and that the two had plans to leave on a trip together that same day. However, she was surprised to see him coming over the fence into her patio area, and she testified that she had not given appellant permission to enter her apartment.

Griffiths asked appellant why he was there, and he seemed "surprised" that she was there. He started walking backward toward the patio, and he told her that he was looking for Harvey. He then jumped back over the fence. Griffiths thought his behavior was odd because she knew that Harvey's and appellant's flight for the trip was scheduled to leave around 3:00 p.m. She believed that appellant would know that Harvey would be at the airport by that time of the afternoon.

Griffiths immediately followed appellant and looked over the fence, where she observed appellant's truck "backed up near [her] fence line stuck in the mud." She observed the rug from her living room and a wooden pallet, also previously located in her home, under appellant's truck. Appellant told her that he was using the items in an attempt to get his truck unstuck.

Griffiths was also able to observe the contents of the truck. She saw a television in the backseat of his truck, and she asked appellant if it was hers because she had noticed that her television was missing as she followed appellant through the apartment to the patio. She also noticed that the bed of appellant's

3

truck contained a blue dehumidifier that previously had been placed in her apartment by the construction crew. Griffiths asked appellant to identify the brand of the television "so that [she] could verify that it was not [hers]." Appellant refused to identify the television, so Griffiths told him that she was going to come around the fence. She got in her car and drove around the apartment complex to the meadow behind her fence where appellant's truck was stuck. As she parked her car in that area, she called 9-1-1.

The State sought to admit a recording of Griffiths' 9-1-1 call, and appellant objected on hearsay grounds. The trial court overruled appellant's objection and admitted the 9-1-1 tape into evidence. In the tape, Griffiths reported that the television was missing, and she expressed her suspicion that appellant had stolen it.

While she was on the phone with 9-1-1, she asked appellant to show her the backseat of the truck. When he opened the door, the television she had seen from her backyard was no longer in the truck. She also observed that the blue dehumidifier that had been in the back of appellant's truck had been moved onto her patio. Griffiths, who testified that she "had been talking to 911," also spoke to the construction crew regarding the dehumidifier and then asked appellant where he had put her television. Griffiths testified that appellant denied knowing anything about the television and denied that there had ever been a television in the truck.

4

At that point, she asked appellant, who had still been trying to get his truck unstuck, to stay in the area until the police could arrive and "sort this out." The police arrived approximately fifteen minutes later. An officer found her television "right there in the bushes" near appellant's truck. Using the box her television had come in, Griffiths and the police compared the serial numbers and determined that the television in the bushes was Griffiths' television, which had been in her apartment when she left for work that morning.

The police officer who responded to the call, Officer H. Morales, testified that he received a call about "a suspicious event" involving "someone's pickup truck stuck in a field [behind the] martial arts studio" located near Griffiths' apartment. Appellant told Officer Morales that he was there visiting Harvey and that Harvey had given him permission to go inside the apartment. Officer Morales also spoke with Griffiths, who told him that her television was missing. Officer Morales then discovered a television "about 25 feet from where [appellant's] truck was parked." Officer Morales stated that he did not find anything belonging to Griffiths inside appellant's truck.

Appellant testified on his own behalf. He stated that on the day of the burglary, he had planned to take a trip with Harvey. When Harvey failed to show at their agreed meeting place, appellant decided to go check Harvey's apartment. When appellant arrived at the apartment, he could not pull into the driveway or

park in the parking spot because there was construction equipment in the way, so he drove around to the back of the apartment. He testified that he initially yelled over the fence, and when he received no answer, he went over the fence and walked up to the patio door and yelled into the house from there. No one answered, and he did not see anyone in the apartment, so he returned to his truck. Once he discovered that his truck was stuck in the mud, he used some wood slats and a rug that he had found in the area by the fence to try to get his truck unstuck.

Appellant jumped back over the fence to go get more wood to place under his truck's tires and was confronted by Griffiths, who eventually accused him of taking her television. Appellant told Griffiths he did not have her television and allowed her to look in his truck, and Griffiths proceeded to call the police. Appellant denied taking the television out of the apartment and denied that he went to the apartment with the intent to steal anything. The State asked appellant whether Harvey had given him permission to go inside the apartment on that particular day, and appellant testified that Harvey had not given him permission to enter, stating that he had not spoken with Harvey at all that day.

The trial court found appellant guilty of burglary of a habitation. Appellant entered into an agreement with the State as to punishment. This appeal followed.

**Sufficiency of the Evidence**

In his first two points of error, appellant argues that the evidence supporting his conviction is insufficient to demonstrate that he entered the home without the owner's consent or that he committed a theft.

## A.     Standard of Review

In conducting a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We defer to the factfinder to resolve conflicts, weigh the evidence, and draw reasonable inferences. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.*

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, the person "enters a habitation or a building . . . with intent to commit a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02(a)(1); *Morgan v. State*, 501 S.W.3d 84, 90 (Tex. Crim. App. 2016).

## B.     Effective Consent of Owner

In his first point of error, appellant argues that the State failed to prove that he lacked effective consent from the owner. We disagree.

"Effective consent is defined as assent in fact, whether express or apparent, and includes assent by a person legally authorized to act for the owner." *Mims v. State*, 434 S.W.3d 265, 273 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see* TEX. PENAL CODE ANN. §§ 1.07(a)(11), (19), 31.01(3) (West 2016). An "owner" is a person who has possession of a property or a greater right to possession of a property than the actor. TEX. PENAL CODE ANN. § 1.07(a)(35)(A); *Morgan*, 501 S.W.3d at 91–92. Whether a defendant had effective consent to enter "must be measured at the time of the accused's alleged criminal act." *Morgan*, 501 S.W.3d at 92 (holding that boyfriend who previously had access to property nevertheless entered without effective consent when property owner's testimony "made it clear that, at the time of the offense, she and [defendant] had been arguing [and she] had locked him out of the apartment").

Here, Griffiths, whose name was on the lease for the apartment, was an "owner" as that term is defined in the Penal Code. *See* TEX. PENAL CODE ANN. § 1.07(a)(35)(A); *Morgan*, 501 S.W.3d at 91–92. She testified that she had not given appellant permission to enter her apartment. *See Morgan*, 501 S.W.3d at 92 (testimony of property owner that she did not give permission to enter habitation is

8

"sufficient to establish the absence of effective consent") (quoting *Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. [Panel Op.] 1980)).

Appellant argues that he had been permitted to enter the apartment on previous occasions, and he cites *Villanueva v. State* to support his contention. *See* 711 S.W.2d 739, 740 (Tex. App.—San Antonio 1986, pet. ref'd) (determining that evidence was insufficient to prove beyond reasonable doubt that Villanueva had entered habitation without effective consent because his "testimony that he entered the house with [the owner's son's] consent was not contradicted"). However, in considering the sufficiency of the evidence of lack of consent, we must measure the giving or removing of effective consent to enter at the time of the alleged criminal act. *See Morgan*, 501 S.W.3d at 92; *see also Rangel v. State*, 179 S.W.3d 64, 69 (Tex. App.—San Antonio 2005, pet. ref'd) (finding sufficient evidence of lack of consent where appellant had previously had access to residence, but owner testified that accused was not given permission to enter on day in question). Griffiths testified that she did not give appellant permission to enter on the day of the offense, and appellant himself testified that Harvey had not given him permission to enter the apartment on the day of the offense. *Cf. Villanueva*, 711 S.W.2d at 740 (citing Villanueva's uncontradicted testimony that he had consent of owner's son at time he entered habitation).

We overrule appellant's first point of error.

## C.    Intent to Commit Theft

In his second point of error, appellant argues that the evidence is insufficient to establish that he committed a theft. However, a completed theft is not an element of burglary; rather, the State was required to prove appellant's entry into the apartment without consent and with the intent to commit a theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(1); *Morgan*, 501 S.W.3d at 90; *see also* TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2016) (providing that person commits theft if he unlawfully appropriates property with intent to deprive owner of property). "A person charged with burglary under Section 30.02(a)(1) is guilty of that offense the moment that he crosses the threshold of a habitation without consent and with the intent to commit the underlying [offense]." *Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006). Intent can be inferred from the acts, words, and conduct of the accused. *Ex parte Weinstein*, 421 S.W.3d 656, 668 (Tex. Crim. App. 2014).

Here, Griffiths testified that she saw appellant jump over her fence and enter her apartment. She confronted him, he seemed "surprised" to see her, and he retreated back over the fence. Griffiths looked over the fence and saw items from her apartment in and around appellant's truck, including a rug, a blue dehumidifier, and a television. By the time she drove around the fence to the place where appellant's truck was stuck, the television was gone and the dehumidifier had been moved onto her patio. At that point appellant denied that he ever had a television in

his truck. Officer Morales subsequently found the television in the weeds approximately twenty-five feet from appellant's truck, Griffiths was able to confirm that the television belonged to her, and she testified that it had been in her apartment when she left for work earlier that day.

Based on this evidence of appellant's acts, words, and conduct, the trial court, acting as the factfinder, could have drawn a reasonable inference that appellant entered Griffiths' apartment with the intent to deprive her of property. *See Ex parte Weinstein*, 421 S.W.3d at 668 (intent may be inferred); *Hooper*, 214 S.W.3d at 13 (factfinder may draw reasonable inferences). Contrary to appellant's assertion, for there to be sufficient evidence of the intent it was not necessary that Griffiths knew immediately upon observing the television in appellant's truck that it was hers. *See Hooper*, 214 S.W.3d at 13. Nor was it necessary that the State prove appellant's possession of the television to support his conviction for burglary. *See Langs*, 183 S.W.3d at 686 (holding that offense of burglary is completed when accused crosses threshold of habitation without consent and with intent to commit underlying offense).

We overrule appellant's second point of error.

## Admission of Evidence

In his third point of error, appellant argues that the trial court abused its discretion in admitting a recording of Griffiths' 9-1-1 call.

## A.   Standard of Review

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of applicable law, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Tarley v. State*, 420 S.W.3d 204, 206 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

## B.   Admission of 9-1-1 Call

Appellant argues that the recording of the 9-1-1 call contained improper hearsay and, thus, the trial court abused its discretion in admitting the recording.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). It is generally inadmissible unless a statute or the Rules of Evidence provide a specific exception permitting its admission. TEX. R. EVID. 802. Rule 803(1) provides an exception for a present sense impression. TEX. R. EVID. 803(1). A present sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. *Id.* Under this exception, "the contemporaneity of the statement with the event that it describes eliminates all danger of faulty memory

and virtually all danger of insincerity." *Fischer v. State*, 252 S.W.3d 375, 379 (Tex. Crim. App. 2008). The risk of falsehood is minimized because the statement is instinctive, not deliberate. *Id.* at 381.

Appellant mischaracterizes the evidence in arguing that, in the 9-1-1 call, Griffiths asked "the police to meet her in the parking lot of a nearby business, not at the scene" and that she "recounted events from the past as opposed to reporting events as they were occurring." Griffiths testified that she made the 9-1-1 call in the midst of her confrontation with appellant, immediately after she had driven around to the back side of her apartment where appellant had parked his truck. She testified that, while she was on the phone with 9-1-1, she was discussing her missing television with appellant and discussing the dehumidifier with the nearby construction crew. Thus, in her 9-1-1 call, she described events as she was perceiving them or immediately thereafter, and the trial court did not abuse its discretion in admitting the recording. *See* TEX. R. EVID. 803(1); *Fischer*, 252 S.W.3d at 379.

We overrule appellant's third point of error.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).