**AFFIRM; and Opinion Filed March 20, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-14-00224-CR
No. 05-14-00225-CR
No. 05-14-00226-CR

**WILLIAM PAUL HUDSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 416-82440-2011, 416-82442-2011, & 416-82443-2011**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

A jury convicted William Paul Hudson of theft, securities fraud, and money laundering arising out of a continuing scheme to defraud and steal money from investors in an oil and gas well rework project referred to as the Gulf Coast project. The trial court assessed punishment at ten years in prison on each charge, but suspended the imposition of the sentence in the securities fraud and money laundering cases, placed appellant on community supervision in those two cases, and ordered him to pay over $600,000 in restitution to the victims as a condition of community supervision.

On appeal, appellant argues that (1) convicting him of both theft and money laundering violated the Double Jeopardy Clause; (2) the evidence is insufficient to show he unlawfully appropriated and possessed $200,000 or more; (3) the jury charge improperly relieved the State

of its burden of proof; (4) the trial court abused its discretion by ordering restitution; and (5) the sentences are improper because they will result in consecutive punishment and certain revocation of his community supervision. For the reasons that follow, we affirm the trial court's judgments.

<h2 style="text-align:center">BACKGROUND</h2>

Appellant owned PH Consulting, LLC through which he and his sales agents solicited funds for alleged investment in the Gulf Coast project between April 2007 and January 2008. PH Consulting received over $500,000 in revenue from numerous victims. The Gulf Coast project was sold as a rework of three existing oil wells and promoted as a cheaper alternative to drilling new wells with a low-risk investment. The project was also supposed to be completed within a short time frame so that investors would receive a return on their investment quickly. PH Consulting provided prospective investors a prospectus and other documentation stating that investor funds would be kept in an escrow account and used solely for the Gulf Coast project.

Some investors became concerned when they did not receive confirmation of their investment from PH Consulting or updates from appellant about the status of the project. They began calling appellant and the other sales agents at PH Consulting, but were mostly unsuccessful in reaching them. When they did talk to or exchange email communications with appellant, he gave various reasons for the delays in the project. In a couple of instances, appellant promised to return the investors' money, but never did. The Gulf Coast project never materialized.

Pursuant to a complaint, the Texas State Securities Board investigated PH Consulting and appellant. An investigator with the State Securities Board determined that the interests PH Consulting was selling in the Gulf Coast project were securities, but that appellant and his sales agents were not licensed to sell securities in Texas. Appellant voluntarily met with the investigator and provided numerous documents concerning PH Consulting and the Gulf Coast

–2–

project. He told the investigator that the Gulf Coast project was a "joint venture" and, as such, was not a security requiring a license to sell. He also told the investigator that he had used money received from investors on administrative costs, profit sharing (sales agent commissions), and some personal expenses.

A financial examiner with the State Securities Board examined PH Consulting's bank accounts and other documentation and identified over $500,000 in revenue PH Consulting received from investors for the Gulf Coast project, none of which had been placed in an escrow account or used for oil-venture related expenses. Instead, the funds were used to pay sales agents, stores, restaurants, apartment rent, house payments, a pool service, a church, utilities, cleaning services, medical costs, and school expenses. Appellant said his accountant told him it was not a problem to run his personal expenses through the company's account.

As a result of the State Securities Board's investigation, the State indicted appellant for theft, securities fraud, and money laundering as part of a scheme and continuing course of conduct. The State alleged there were over thirty victims of this scheme and the aggregate value of the property appropriated and possessed was $200,000 or more. Appellant pleaded not guilty to a jury, and these convictions resulted.

### ISSUE ONE: DOUBLE JEOPARDY CLAIM

In issue one, appellant argues that he was punished twice for the same offense, violating the Double Jeopardy Clause. He contends that "the Theft alleged as a predicate offense in the Money Laundering indictment is identical to the offense alleged in the Theft indictment" and that punishment for both money laundering and theft violate double jeopardy. He concedes that he did not raise this multiple-punishment issue below and is excused from the preservation requirement only if (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record, and (2) enforcement of the usual rules of procedural default

serves no legitimate state interests. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). He applies the "elements" test explained in *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)), and argues that the record on its face shows a double jeopardy violation.

The State argues that when a defendant is prosecuted in one trial for multiple offenses that arise out of the same conduct, "the ultimate question is simply whether the legislature intended to allow the same conduct to be punished under both offenses." Citing the money laundering statute, the State argues that the "unambiguous expression of legislative intent" here is that both punishments are authorized. We agree with the State.

"A double jeopardy claim based on multiple punishments arises when the State seeks to punish the same criminal act twice under two distinct statutes under circumstances in which the Legislature intended the conduct to be punished only once." *Shelby v. State*, 448 S.W.3d 431, 435 (Tex. Crim. App. 2014) (citing *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006)). The primary consideration in a multiple-punishment double jeopardy claim is legislative intent. *Id*; *Langs*, 183 S.W.3d at 685 n.15 (citing *Missouri v. Hunter*, 459 U.S. 359 (1983)).

The unambiguous language of the money laundering statute expresses the legislature's intent to authorize multiple punishments for conduct that constitutes both money laundering and "an offense under any other law":

> (h) If conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section, the other law, or both.

TEX. PENAL CODE ANN. § 34.02(h) (West 2011). Because we have a clear expression of the legislature's intent to authorize multiple punishments for money laundering and "any other law," in this case theft, we do not need to construe the statutes to determine whether they proscribe the

same conduct under the *Blockburger* "elements" test. *Langs*, 183 S.W.3d at 685 n.15 (quoting *Hunter*, 459 U.S. at 368–69.)

We conclude that a double jeopardy violation is not clearly apparent on the face of the record and appellant has not met the first prong of the exception to the preservation requirement. Consequently, appellant has not preserved his double jeopardy claim for our review. We resolve issue one against appellant.

### ISSUE TWO: SUFFICIENCY OF THE EVIDENCE

In issue two, appellant argues that the evidence is insufficient to support the theft and money laundering convictions with regard to one element of each offense: the value of the property appropriated (theft) and possessed (money laundering). *See* TEX. PENAL CODE ANN. §§ 31.03(a) (West Supp. 2014) (stating elements of theft), 34.02(a)(1) (stating elements of money laundering).

In determining a sufficiency issue, we review the record in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The jury is the sole judge of the weight and credibility of the evidence and resolves all conflicts in the evidence. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

The State indicted appellant for theft and money laundering of property with a value of $200,000 or more. Appellant claims that eight of the victims testified they were defrauded out of $107,000 to $108,000, but that "[t]he record provides no such insight regarding the remaining named investors."[1] Although appellant acknowledges that the State offered "documents showing

---

[1] Appellant does not include a single reference to the record in the argument section of his brief on this issue, and his citations to the record in the statement of facts section are only to the first page of each witness's testimony. *See* TEX. R. APP. P. 38.1(g), (i) (requiring brief to include appropriate citations to record); *see also Mosley v. State*, 494 S.W.2d 557, 558 (Tex. Crim. App. 1973). The State called 12 witnesses at trial

–5–

these [remaining] investors did make the investment amounts alleged," he contends that "the record remains silent as to other communications between [him] and these investors, and, as such, no reasonable jury could have found beyond a reasonable doubt that he committed theft or money laundering with regard to their investments."

We construe appellant's argument to contend that the evidence is insufficient to show he appropriated and possessed $200,000 or more because the State's documentary evidence is insufficient to show the dollar amounts sent to PH Consulting by the non-testifying victims and, without that evidence, at most the State proved he appropriated and possessed about $108,000. Appellant complains about the State's documentary evidence of the non-testifying victims' losses, but appellant stipulated to the admission for all purposes of an exhibit that contained copies of checks totaling $217,322 delivered to PH Consulting by many of those victims for participation in the Gulf Coast project. He also had "no objection" to four other exhibits that contained copies of checks from other victims totaling $36,505. This evidence alone shows appellant appropriated and possessed over $250,000.

Additionally, in 2010, PH Consulting filed for bankruptcy and in its bankruptcy filing, PH Consulting listed the names of the people who had sent the company money for various investments, including the Gulf Coast project, as unsecured creditors and the amounts owed to them. Appellant had "no objection" to this evidence, and it showed that the list of unsecured creditors and the amounts of their claims matched the names and amounts in the theft indictment and totaled well over $200,000.

---

whose testimony is contained in three volumes of the reporter's record; the documentary evidence consists of 90 exhibits totaling 1,365 pages. We are not required to search the record for support of a party's argument. *See* TEX. R. APP. P. 38.1(i); *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

Having reviewed the evidence in the appropriate light, we conclude that it is sufficient to show that appellant appropriated and possessed $200,000 or more.[2]  We resolve issue two against appellant.

### ISSUE THREE:  CHARGE ERROR

In issue three, appellant complains of charge error.  He contends that the trial court abused its discretion by including in the jury charge an instruction based on article 38.39 of the code of criminal procedure, which states:

> In trials involving an allegation of a continuing scheme of fraud or theft alleged to have been committed against a large class of victims in an aggregate amount or value, it need not be proved by direct evidence that each alleged victim did not consent or did not effectively consent to the transaction in question.  *It shall be sufficient if the lack of consent or effective consent to a particular transaction or transactions is proven by either direct or circumstantial evidence.*

TEX. CODE CRIM. PROC. ANN. art. 38.39 (West 2005) (emphasis added).  Appellant contends that article 38.39 relieves the State of its burden to prove lack of consent of the non-testifying victims and it was error to include an instruction in the jury charge based on this statute.  Appellant argues that article 38.39 "allows the State, by proving as little as a single transaction lacked effective consent, to take advantage of an implied presumption that each alleged victim in 'a large class of victims' also did not consent or effectively consent to a similar transaction."  He contends that the statute "relieves the State of meeting its burden of proving each and every element of an offense beyond a reasonable doubt."

In reviewing a claim of jury charge error, our first task is to determine whether there is error in the charge.  *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).  We conclude there is not.

---

[2] To the extent the State addresses any other element of the theft and money laundering charges, we do not interpret appellant's argument on appeal to complain about the evidence to support those elements.

Appellant has not cited authority for his argument that article 38.39 contains an "implied presumption" regarding lack of consent. And the plain language of the statute requires the State to prove lack of consent of all victims. *See* TEX. CODE CRIM. PROC. ANN. art. 38.39 (stating lack of consent may be proved by direct or circumstantial evidence). Although the law at one time required lack of consent to be proved by direct testimonial evidence of the victim unless that evidence was not available, since 1974 the law has been that the State may prove lack of consent by either direct or circumstantial evidence. *Taylor v. State*, 508 S.W.2d 393, 394–97 (Tex. Crim. App. 1974); *Williams v. State*, 591 S.W.2d 873, 875 (Tex. Crim. App. [Panel Op.] 1979); *Ashby v. State*, 604 S.W.2d 897, 900 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g). In other words, lack of consent may be proved "by circumstantial evidence the same as any other issue in a criminal case may be proved by circumstantial evidence." *Taylor*, 508 S.W.2d at 397.

Appellant cites the general law regarding proof beyond a reasonable doubt, presumption of innocence, sufficiency of the evidence, hypothetically correct jury charge, and effective consent. But he does not explain how article 38.39 eliminated the State's burden to prove lack of consent of the non-testifying victims or why circumstantial evidence of those victims' lack of consent is constitutionally infirm. We resolve issue three against appellant.

### ISSUE FOUR: RESTITUTION

In issue four, appellant argues that "[t]he trial court erred in ordering restitution as a condition of probation in Appellant's Securities Fraud and Money Laundering convictions." He contends that the trial court abused its discretion by ordering him to pay restitution because (1) the amount of restitution does not have a factual basis; (2) the restitution amount "does not comport with the offense"; (3) the order requires him to pay restitution to individuals not named as victims; and (4) the court did not consider his ability to make payments.

Appellant concedes that he did not object to the restitution order below, but argues that he may nevertheless challenge the sufficiency of the evidence to support the restitution order for the first time on appeal. He cites *Moff v. State*, 131 S.W.3d 485 (Tex. Crim. App. 2004), to support his argument. But *Moff* addressed the sufficiency of the evidence to support a conviction, not a restitution order, and does not apply here. *Id*. at 488–89.

Conditions of probation are like a contract between the defendant and the trial court. *Gutierrez-Rodriguez v. State*, 444 S.W.3d 21, 23 (Tex. Crim. App. 2014). If the defendant does not object to the conditions, those conditions are "affirmatively accepted as terms of the contract[.]" *Id*. (internal citation omitted). Appellant argues that he requested a hearing on restitution and did not get one, but he does not cite the record where he requested a hearing. At the conclusion of the punishment hearing, appellant asked the trial court if he would be "open" to a hearing on restitution, and the court said, "Of course. Of course." But there is nothing in the record to show appellant ever requested a hearing. Instead, the record shows that appellant signed the conditions of probation without objection. Because appellant did not object below, he cannot complain on appeal. *Id*. We resolve issue four against appellant.

### ISSUE FIVE: IMPROPER SENTENCES

Issue four states:

> Imposing probated sentences in two cases and a ten-year term of confinement in a third guarantees Appellant will violate the terms of his probation; having done so, the trial court made a future revocation of Appellant's probated sentences a certainty, effectively imposing consecutive terms of confinement, contrary to law.

Appellant argues that because the trial court sentenced him to ten years' community supervision in the money laundering and securities fraud cases and ordered those sentences to run concurrently with the ten-year sentence of incarceration in the theft case, "the practical effect of . . . the sentences rendered them consecutive[.]" He argues that "the sentences in this case [sic] make it inevitable that Appellant's probation will be revoked" because he cannot satisfy the

conditions of community supervision while imprisoned and will have a shortened period of time to complete community supervision if he is released on parole before the expiration of the prison term. He contends that this "virtually certain revocation" and subsequent imprisonment for violation of community supervision "renders these three sentences consecutive rather than concurrent[.]"

Appellant cites no authority to support this argument. The code of criminal procedure states:

> If a defendant has been convicted in two or more cases and the court suspends the imposition of the sentence in one of the cases, the court may not order a sentence of confinement to commence on the completion of a suspended sentence for an offense.

TEX. CODE CRIM. PROC. ANN. art. 42.08(c) (West Supp. 2014).

The language of this statute anticipates that a trial court may sentence a defendant to community supervision in one case and imprisonment in another and precludes a court from ordering a defendant to serve the community supervision first and then the prison sentence. *See id.* Instead, the sentences must be served either consecutively, with the defendant serving the prison time first, *id.*, or concurrently if the cases were tried together, *see* TEX. PENAL CODE ANN. § 3.03(a) (West Supp. 2014). Appellant has cited no basis for us to conclude that the sentences assessed by the trial court are "contrary to law," and we have found none. We resolve issue five against appellant.

## CONCLUSION

We affirm the trial court's judgments.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

140224F.U05

–10–



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

WILLIAM PAUL HUDSON, Appellant

No. 05-14-00224-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-82440-2011.
Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of March, 2015.



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

WILLIAM PAUL HUDSON, Appellant

No. 05-14-00225-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-82442-2011.
Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of March, 2015.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

WILLIAM PAUL HUDSON, Appellant

No. 05-14-00226-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-82443-2011.
Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of March, 2015.